**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| MICHEL DEGRAFF,<br><br>    *Plaintiff*,<br><br> v.<br><br>MASSACHUSETTS INSTITUTE OF<br>TECHNOLOGY, *et al.,*<br><br>    *Defendants.* | Case No. 1:26-cv-11488-ADB<br><br>**Leave to File Excess Pages<br>Granted on May 7, 2026** |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CONGRESSIONAL DEFENDANTS' MOTION TO DISMISS

MATTHEW B. BERRY
 *General Counsel*
TODD B. TATELMAN
 *Deputy General Counsel*
ANDY T. WANG
 *Associate General Counsel*
ALICIA GARTEN
 *Assistant General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
matthew.berry@mail.house.gov

*Counsel for Congressional Defendants*

June 5, 2026

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ......................................................................................................................... 2

ARGUMENT ............................................................................................................................. 6

I.      The Court Lacks Subject Matter Jurisdiction Over Count I ............................................ 6

        A.      The Speech or Debate Clause Bars Plaintiff's Suit and Requested Relief ............. 6

                1.      The Speech or Debate Clause ........................................................................ 6

                2.      Information-Gathering and the Use of That Information Are
                        Legislative Acts ............................................................................................ 7

                3.      The Speech or Debate Clause Requires Dismissal of Count I .................. 10

                4.      Plaintiff Cannot Overcome the Clause ....................................................... 12

        B.      Plaintiff Lacks Standing ......................................................................................... 15

        C.      Because Congressional Defendants Are Necessary Parties Under Rule 19,
                Count I Must Be Dismissed in Its Entirety ............................................................. 18

                1.      Congressional Defendants Are Required Parties ..................................... 19

                2.      Congressional Defendants Are Immune from Suit .................................... 19

                3.      The Rule 19(b) Factors Favor Congressional Defendants ........................ 21

II.     Count I Fails To State a Claim Upon Which Relief Can Be Granted ............................. 22

        A.      Plaintiff Does Not Plausibly Allege Coercion ....................................................... 22

        B.      MIT Is Not a State Actor ........................................................................................ 24

CONCLUSION ......................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Abany v. Fridovich*,
862 F. Supp. 615 (D. Mass. 1994) ...............................................................................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................22

*Ass'n of Am. Physicians & Surgeons v. Schiff*,
518 F. Supp. 3d 505 (D.D.C. 2021), *aff'd*,
23 F.4th 1028 (D.C. Cir. 2022)...............................................................................8, 10

*Back Beach Neighbors Comm. v. Town of Rockport*,
535 F. Supp. 3d 57 (D. Mass. 2021), *aff'd*,
63 F.4th 126 (1st Cir. 2023).....................................................................................22

*Barcelo v. Agosto*,
876 F. Supp. 1332 (D.P.R. 1995), *aff'd sub nom.*
*Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23 (1st Cir. 1996) .......................13

*Barenblatt v. United States*,
360 U.S. 109 (1959).....................................................................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).....................................................................................................22

*Blum v. Holder*,
744 F.3d 790 (1st Cir. 2014).....................................................................................17

*Blum v. Yaretsky*,
457 U.S. 991 (1982)....................................................................................................24

*Bogan v. Scott-Harris*,
523 U.S. 44 (1998).....................................................................................................13

*Bragg v. Jordan*,
669 F. Supp. 3d 257 (S.D.N.Y. 2023), *appeal dismissed sub nom.*
*Bragg v. Pomerantz*, No. 23-615, 2023 WL 4612976 (2d Cir. Apr. 24, 2023).................13, 15

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
531 U.S. 288 (2001)....................................................................................................24

*Brown & Williamson Tobacco Corp. v. Williams*,
62 F.3d 408 (D.C. Cir. 1995)....................................................................................10

*Budowich v. Pelosi*,
  610 F. Supp. 3d 1 (D.D.C. 2022) ....................................................................................25

*Colon Berrios v. Hernandez Agosto*,
  716 F.2d 85 (1st Cir. 1983) ..........................................................................................8, 9

*Comm. on Ways & Means, U.S. House of Representatives v. U.S. Dep't of Treasury*,
  575 F. Supp. 3d 53 (D.D.C. 2021) ..................................................................................14

*Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc.*,
  958 F.3d 38 (1st Cir. 2020) .......................................................................................17, 18

*De la Torre v. Cassidy*,
  800 F. Supp. 3d 54 (D.D.C. 2025) ..................................................................................12

*Deschutes River All. v. Portland Gen. Elec. Co.*,
  1 F.4th 1153 (9th Cir. 2021) ...........................................................................................20

*Doe v. McMillan*,
  412 U.S. 306 (1973) ................................................................................................7, 9, 12

*Dombrowski v. Burbank*,
  358 F.2d 821 (D.C. Cir. 1966), *rev'd in part on other grounds sub nom.*
  *Dombrowski v. Eastland*, 387 U.S. 82 (1967) (per curiam) ......................................11, 12

*Dombrowski v. Eastland*,
  387 U.S. 82 (1967) (per curiam) ......................................................................................7

*Downing v. Globe Direct LLC*,
  806 F. Supp. 2d 461 (D. Mass. 2011), *aff'd*,
  682 F.3d 18 (1st Cir. 2012) ...........................................................................19, 20, 21, 22

*Duggan v. Martorello*,
  596 F. Supp. 3d 195 (D. Mass. 2022) ..............................................................................19

*Eastland v. U.S. Servicemen's Fund*,
  421 U.S. 491 (1975) ....................................................................................7, 8, 13, 14

*Fakhreddine v. Univ. of Pennsylvania*,
  No. 24-cv-1034, 2025 WL 345089 (E.D. Pa. Jan. 30, 2025) .........................................25

*Gonzalez v. United States*,
  284 F.3d 281 (1st Cir. 2002) ...........................................................................................16

*Gravel v. United States*,
  408 U.S. 606 (1972) ................................................................................................7, 8, 9

*Harris v. McRae*,
  448 U.S. 297 (1980)......................................................................................................22

*Hearst v. Black*,
  87 F.2d 68 (D.C. Cir. 1936)........................................................................................9, 10

*Helstoski v. Meanor*,
  442 U.S. 500 (1979).......................................................................................................7

*Horne v. Flores*,
  557 U.S. 433 (2009)..................................................................................................15, 16

*Hutchinson v. Proxmire*,
  443 U.S. 111 (1979)......................................................................................................11

*Jud. Watch, Inc. v. Schiff*,
  998 F.3d 989 (D.C. Cir. 2021).........................................................................................8

*Kennedy v. Warren*,
  66 F.4th 1199 (9th Cir. 2023) ......................................................................................23

*Khalil v. Trs. of Columbia Univ. in N.Y.C.*,
  No. 25-cv-02079, 2026 WL 775813 (S.D.N.Y. March 19, 2026)...................11, 14, 15, 21, 25

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994)......................................................................................................12

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)...............................................................................................16, 17, 18

*Manhattan Cmty. Access Corp. v. Halleck*,
  587 U.S. 802 (2019)......................................................................................................24

*Martin v. Evans*,
  241 F. Supp. 3d 276 (D. Mass. 2017) ..........................................................................16

*McGrain v. Daugherty*,
  273 U.S. 135 (1927).......................................................................................................13

*McGuire v. Reilly*,
  386 F.3d 45 (1st Cir. 2004)............................................................................................24

*Meadows v. Pelosi*,
  639 F. Supp. 3d 62 (D.D.C. 2022) ...............................................................................12

*Miller v. Transamerican Press, Inc.*,
  709 F.2d 524 (9th Cir. 1983) ........................................................................................11

*NRA v. Vullo*,
  602 U.S. 175 (2024)..................................................................................................14, 23, 24

*Papasan v. Allain*,
  478 U.S. 265 (1986)..................................................................................................22

*Rangel v. Boehner*,
  785 F.3d 19 (D.C. Cir. 2015) ....................................................................................12, 13

*Rederford v. US Airways, Inc.*,
  586 F. Supp. 2d 47 (D.R.I. 2008), *aff'd sub nom.*
  *Rederford v. U.S. Airways, Inc.*, 589 F.3d 30 (1st Cir. 2009)...................................2

*Republic of Philippines v. Pimentel*,
  553 U.S. 851 (2008)..................................................................................................20

*RNC v. Pelosi*,
  602 F. Supp. 3d 1 (D.D.C. 2022), *vacated*,
  No. 22-5123, 2022 WL 4349778 (D.C. Cir. Sept. 16, 2022)...................................20, 21, 25

*Sabri v. United States*,
  541 U.S. 600 (2004)..................................................................................................14, 15

*Senate Permanent Subcomm. on Investigations v. Ferrer*,
  856 F.3d 1080 (D.C. Cir. 2017) ................................................................................9, 10, 11

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)..................................................................................................16, 18

*Tampa Bay Students for a Democratic Soc'y v. Rhea Law*,
  No. 25-cv-02752, 2026 WL 979964 (M.D. Fla. Apr. 10, 2026)................................16, 17

*Tenney v. Brandhove*,
  341 U.S. 367 (1951)..................................................................................................7, 14

*United States v. Brewster*,
  408 U.S. 501 (1972)..................................................................................................7

*United States v. Carroll*,
  667 F.3d 742 (6th Cir. 2012) ....................................................................................18

*United Transp. Union v. Springfield Terminal Ry. Co.*,
  No. 87-civ-0342 P, 1989 WL 38131 (D. Me. Mar. 13, 1989) ..................................8, 11

*Watkins v. United States*,
  354 U.S. 178 (1957)..................................................................................................8

v

*Wichita & Affiliated Tribes of Okla. v. Hodel*,
    788 F.2d 765 (D.C. Cir. 1986) ...................................................................................21

**Legislative Authorities**

Antisemitism Awareness Act of 2025, H.R. 1007, 119th Cong. (2025),
    https://www.congress.gov/bill/119th-congress/house-bill/1007..............................15

Define to Defeat Act of 2025, H.R. 4087, 119th Cong. (2025),
    https://www.congress.gov/bill/119th-congress/house-bill/4087..............................15

*Holding Campus Leaders Accountable and Confronting Antisemitism:*
    *Hearing Before the H. Comm. on Educ. & the Workforce*, 118th Cong. (2023),
    https://perma.cc/G9A4-CWM5...................................................................................4

Majority Staff of H. Comm. on Educ. & Workforce, 119th Cong.,
    How Campuses Became Hotbeds: The Rise of Radical Antisemitism on
    College Campuses (Comm. Print 2026) (Staff Report), https://perma.cc/6YSG-HYCW.....5, 6

PROTECT Jewish Student and Faculty Act, H.R. 406, 119th Cong. (2025),
    https://www.congress.gov/bill/119th-congress/house-bill/406/text .......................15

Rules of the House of Representatives,
    119th Cong. (2025), https://perma.cc/QD7D-WRAX

    House Rule X.1(e) ...................................................................................................4

    House Rule X.2(a)-(b) .............................................................................................4

**Constitution**

U.S. Const. art. I, § 5, cl. 2................................................................................................4

U.S. Const. art. I, § 6, cl. 1................................................................................................7

**Rules**

Fed. R. Civ. P. 19(a) ...............................................................................................18, 21

Fed. R. Civ. P. 19(a)(1)(B) ............................................................................................19

Fed. R. Civ. P. 19(b) ...............................................................................................19, 21

**Other Authorities**

Am. Compl., *Sussman v. MIT*,
    No. 25-cv-11826 (D. Mass. Jan. 5, 2026), ECF 17.................................................3

John F. Kennedy, 35th President of the United States,
Special Message to the Congress on Civil Rights and Job Opportunities (June 19, 1963),
https://perma.cc/8UEZ-C665 .................................................................................................4

Letter from Sally Kornbluth, President, Mass. Inst. Tech.,
to Members of the MIT Community (Aug. 28, 2024),
https://perma.cc/SDP3-SNZL ................................................................................................2

Michel DeGraff (@micheldegraff), *Instagram* (Apr. 3, 2026),
https://perma.cc/Z49L-8K75..................................................................................................16

Michel DeGraff (@MichelDeGraff), *X* (Nov. 11, 2024, 9:10 AM),
https://perma.cc/BW3T-RBYF ..............................................................................................3

Michel DeGraff (@MichelDeGraff), *X* (June 27, 2025, 2:24 PM),
https://perma.cc/KP8K-KJTW...............................................................................................16

News Release, U.S. Dep't of Def.,
Statement by Secretary of Defense Lloyd J. Austin III Marking One Year
Since Hamas' October 7th Terrorist Assault on the State of Israel (Oct. 7, 2024),
https://perma.cc/42QC-FJZ2...................................................................................................2

Order, *Sussman v. MIT*,
No. 25-cv-11826 (D. Mass. Jan. 5, 2026), ECF 75.............................................................3, 14

Will Sussman (@realWillSussman), *X* (Nov. 9, 2024, 9:33 AM),
https://perma.cc/6K82-JYV7 .................................................................................................3

**INTRODUCTION**

After the October 7, 2023 terrorist attacks in Israel, antisemitism swept over our nation's college campuses, leading to discrimination against Jewish students at institutions receiving billions of dollars in federal funds. Plaintiff Michel DeGraff, a Massachusetts Institute of Technology (MIT) linguistics professor, allegedly participated in this troubling trend. He spread the belief that there was a "Zionist mind infection," and stated that a Jewish PhD student, William Sussman, would be an excellent "case study" of it, targeting him in numerous social media posts and mass e-mails. Sussman sued DeGraff over this behavior and MIT for failing to adequately address it. Judge Stearns noted on the docket that the allegations were "deeply troubling (indeed, it culminated in Sussman dropping out … because of safety concerns)." The Committee on Education and Workforce of the U.S. House of Representatives (Committee)—having been delegated the House's legislative jurisdiction related to education—is attempting to combat this rising tide of antisemitism in higher education. It launched an investigation to assess the need for legislative reforms and develop appropriate solutions. As part of its investigation, the Committee sought information from various institutions including MIT.

Plaintiff's suit is a futile attempt to stop the Committee's important work. Among other reasons why it must fail, the Speech or Debate Clause of the U.S. Constitution absolutely bars claims against the Committee and its Chairman Tim Walberg (the Congressional Defendants) for the legislative act of seeking, by letter, information from MIT as part of its investigation into antisemitism on college campuses. Similarly, the Clause and the separation of powers prevent this Court from granting the extraordinary relief that DeGraff seeks, such as an injunction against the Committee's use of information already in its possession, and a gag order on what it can say. Thus, because the Congressional Defendants are immune and have not violated the First

Amendment, and Plaintiff's requested relief is unconstitutional, this suit must be dismissed.

## BACKGROUND[1]

On October 7, 2023, Hamas terrorists attacked Israel, killing over a thousand innocent civilians and taking hundreds hostage.[2] Rather than supporting beleaguered and bereaved Jewish students, many at MIT besieged them. A series of antisemitic incidents rocked the campus. For example, as outlined in letters the Committee has sent to MIT, "[o]n November 9, 2023, the 85th anniversary of the Kristallnacht pogrom, [MIT's Coalition Against Apartheid] … blockade[d] … MIT's main entrance, physically preventing students from attending classes." Decl. of Todd Tatelman (Decl.), Ex. A at 4. The next year, students handed out flyers that linked to the "Mapping Project," which "catalog[ed] hundreds of Jewish … organizations in the Boston area – from … synagogues to universities, businesses and museums – and then provide[d] their addresses," in order to "dismantle them."[3] Not surprisingly, "70 percent [of Jewish MIT students have] changed their behavior (such as no longer wearing a kippah or Star of David) to minimize attention." Decl., Ex. A at 2.

As relevant here, Plaintiff hosted a seminar where a guest lecturer discussed how Israeli

---

[1] This background is based on the Complaint's allegations, materials it incorporates by reference or relies upon, and matters on which judicial notice may be taken. *See Rederford v. US Airways, Inc.*, 586 F. Supp. 2d 47, 50 (D.R.I. 2008) ("[A] court may properly consider not only the complaint, but also the 'facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice.'" (citation omitted)), *aff'd sub nom. Rederford v. U.S. Airways, Inc.*, 589 F.3d 30 (1st Cir. 2009).

[2] News Release, U.S. Dep't of Def., Statement by Secretary of Defense Lloyd J. Austin III Marking One Year Since Hamas' October 7th Terrorist Assault on the State of Israel (Oct. 7, 2024), https://perma.cc/42QC-FJZ2.

[3] Letter from Sally Kornbluth, President, Mass. Inst. Tech., to Members of the MIT Community (Aug. 28, 2024), https://perma.cc/SDP3-SNZL; *see also* Decl., Ex. B at 1.

education was "Zionist 'mind infection.'"[4] DeGraff then disseminated on social media that this "mind infection" was being spread at MIT by Chabad, Hillel and Olami, three prominent Jewish groups.[5] When Will Sussman, a PhD student at MIT, criticized DeGraff for this "extremely dangerous rhetoric,"[6] DeGraff tagged Sussman in multiple tweets, with one stating that Sussman would make "an excellent case study."[7] According to a complaint that Sussman filed in this district against DeGraff, during DeGraff's tweeting frenzy, Sussman emailed DeGraff and MIT's administration to get DeGraff to stop because "he has directed his audience of 10,000+ strangers at me."[8] Instead of stopping, DeGraff continued to post about Sussman on X and responded via mass email multiple times, including one email where he "expressed an intent to explore this 'real-life case study' of Sussman at the next class."[9] Sussman was forced to seek police protection, and at no point did MIT administrators ask DeGraff to stop.[10] MIT ultimately determined that DeGraff's actions were not antisemitic because MIT believed DeGraff's actions

---

[4] Will Sussman (@realWillSussman), *X* (Nov. 9, 2024, 9:33 AM), https://perma.cc/6K82-JYV7.

[5] *Id.*

[6] *Id.*

[7] Michel DeGraff (@MichelDeGraff), *X* (Nov. 11, 2024, 9:10 AM), https://perma.cc/BW3T-RBYF.

[8] Am. Compl. ¶¶ 115-35, *Sussman v. MIT*, No. 25-cv-11826 (D. Mass. Jan. 5, 2026), ECF 17. Sussman brought state-law claims against DeGraff and Title VI deliberate indifference claims against MIT. While Judge Stearns has dismissed Sussman's Title VI claims for not meeting Title VI's "stringent standard of fault," he found Sussman's allegations "deeply troubling (indeed, it culminated in Sussman dropping out of his PhD program because of safety concerns)," and characterized DeGraff's "purported harassment" as "ugly behavior" and MIT's response as "far from what should be expected by a university." Order, *Sussman*, No. 25-cv-11826 (D. Mass), ECF 75. Further, Judge Stearns did not pass judgment on any of Sussman's claims against DeGraff on the merits, instead, he merely "decline[d] to exercise supplemental jurisdiction over" them given the dismissal of the Title VI claims. *Id.*

[9] Am. Compl. ¶¶ 115-35, *Sussman*, No. 25-cv-11826 (D. Mass), ECF 17.

[10] *Id.* ¶¶ 127, 130, 138-39.

were based on Sussman's views instead of his Jewish identity.[11]

MIT receives federal funding. ECF 1 ¶ 27. As President John F. Kennedy stated in calling for the enactment of the Civil Rights Act of 1964:

> [J]ustice requires that public funds … not be spent in any fashion which encourages, entrenches, subsidizes, or results in racial discrimination. Direct discrimination … is prohibited by the Constitution. But indirect discrimination, through the use of Federal funds, is just as invidious; and it should not be necessary to resort to the courts to prevent each individual violation.[12]

To ensure that Jewish students such as Will do not have to "resort to the courts" just so that they can freely attend class, the Committee began its investigation into antisemitism in higher education, including at MIT.[13]

The Committee commenced its overarching investigation into antisemitism on college campuses during the 118th Congress. The Committee requested information from and held hearings with numerous schools, including MIT.[14] On March 8, 2024, the Committee sent a letter to MIT requesting categories of information relating to antisemitic incidents that occurred on MIT's campus and how MIT had responded to them. Decl., Ex. A at 8-12. As the Committee explained, the requested information would "assist the Committee in understanding antisemitism

---

[11] *Id.* ¶¶ 151-58.

[12] John F. Kennedy, 35th President of the United States, Special Message to the Congress on Civil Rights and Job Opportunities (June 19, 1963), https://perma.cc/8UEZ-C665.

[13] Pursuant to the Constitution's Rulemaking Clause, U.S. Const. art. I, § 5, cl. 2, the House has delegated its extensive legislative powers related to education to the Committee. *See* Rule X.1(e), Rules of the House of Representatives, 119th Cong. (2025) (House Rules), https://perma.cc/QD7D-WRAX. House Rules also delegate to the Committee "general oversight responsibilities" intended to enable it "to assist the House in" reviewing "the application, administration, execution, and effectiveness of Federal laws," "conditions and circumstances that may indicate the necessity or desirability of enacting new or additional legislation," and the "formulation, consideration and enactment of changes in Federal laws." House Rule X.2(a)-(b). These rules are identical to those in place during the 118th Congress.

[14] *Holding Campus Leaders Accountable and Confronting Antisemitism: Hearing Before the H. Comm. on Educ. & the Workforce*, 118th Cong. (2023), https://perma.cc/G9A4-CWM5.

at MIT" and the university's response to it, and "[u]nder House Rule X, the Committee has legislative and oversight jurisdiction over 'education ... generally.'" *Id*. at 8, 12.

The Committee followed up with another letter on December 11, 2025, detailing additional antisemitic incidents that took place at MIT. Decl., Ex. B at 1-2. It also recounted "alleg[ations]" from Sussman's complaint, which had been filed a few months prior. *Id*. at 2. This letter again requested certain documents and explained how they "will aid the Committee in considering whether potential legislative changes, including legislation to specifically address antisemitic discrimination, are needed." *Id*. at 1.

On March 17, 2026, the Committee sent a third letter to MIT. Decl., Ex. C. This letter, while broadly detailing the Sussman incident, was focused more narrowly on "understanding how and why entities, such as [MIT]," reach determinations on what actions are or are not antisemitic. *Id*. at 2. As the Committee explained, given that schools "are grappling with how to define and respond to antisemitism," how MIT's "leaders deliberate about and respond to the harassment of Jewish students[] is critical to the Committee's legislative efforts related to antisemitism, including potential reforms related to Title VI of the Civil Rights Act of 1964." *Id*. The March 17 letter sought records related to how and why MIT determined DeGraff's actions were not antisemitic, and records pertaining to whether DeGraff has ever faced discipline for antisemitic actions. *Id*. at 3-4. The same day, the Committee released a report.[15] The Staff Report explains that "[t]he Committee examined whether schools are meeting their obligations under Title VI and whether existing statutes are sufficient to protect Jewish students from

---

[15] Majority Staff of H. Comm. on Educ. & Workforce, 119th Cong., How Campuses Became Hotbeds: The Rise of Radical Antisemitism on College Campuses (Comm. Print 2026) (Staff Report), https://perma.cc/6YSG-HYCW.

discrimination."[16] In a section pertaining to MIT, the Staff Report recounts the Sussman

incident, quotes from Plaintiff's own social media posts about a "Zionist mind infection," and

discusses how MIT believes that DeGraff's actions do not constitute antisemitism.[17]

On March 28, Plaintiff filed this lawsuit. ECF 1. Count I, the sole count lodged against

the Congressional Defendants, alleges that "[t]he Committee's demand that MIT relinquish

Plaintiff's records violates the First Amendment." *Id.* at 55. Plaintiff seeks declaratory and

injunctive relief, as well as attorneys' fees. *Id.* at 65-66.

## ARGUMENT

Count I should be dismissed for lack of subject matter jurisdiction and because it does not

state a claim upon which relief can be granted.

## I.   The Court Lacks Subject Matter Jurisdiction Over Count I

There are three separate and independent reasons that this Court lacks subject matter

jurisdiction over Count I. *First*, the Speech or Debate Clause absolutely shields Congressional

Defendants from this suit. *Second*, Plaintiff lacks standing. And *third*, Congressional Defendants

are necessary parties to Count I under Rule 19, but because they are immune, they cannot be

joined and this Court therefore may not adjudicate Count I as it relates to MIT.

### A.   The Speech or Debate Clause Bars Plaintiff's Suit and Requested Relief

Because the Speech or Debate Clause absolutely bars Plaintiff's suit and requested relief,

Count I against the Congressional Defendants must be dismissed.

#### 1.   The Speech or Debate Clause

The Speech or Debate Clause mandates that "for any Speech or Debate in either House,

---

[16] *Id*. at 2.

[17] *Id*. at 17.

6

[Senators and Representatives] shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl. 1. By "freeing the legislator from executive and judicial oversight that realistically threatens to control his conduct," *Gravel v. United States*, 408 U.S. 606, 618 (1972), the Clause both "preserve[s] the independence and ... integrity of the legislative process," *United States v. Brewster*, 408 U.S. 501, 524 (1972), and "reinforc[es] the separation of powers," *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975) (citation omitted). The Clause's absolute immunity extends to all civil actions. *See id*. at 503. It protects federal legislators "not only from the consequences of litigation's results but also from the burden of defending themselves." *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967) (per curiam). Because "the guarantees of th[e] Clause are vitally important to our system of government," they "are entitled to be treated by the courts with the sensitivity that such important values require." *Helstoski v. Meanor*, 442 U.S. 500, 506 (1979). Accordingly, the Supreme Court has "[w]ithout exception, … read the Speech or Debate Clause broadly to effectuate its purposes." *Eastland*, 421 U.S. at 501. The Clause provides, among other things, immunity from suit with respect to all actions "within the 'legislative sphere.'" *Doe v. McMillan*, 412 U.S. 306, 312 (1973) (quoting *Gravel*, 408 U.S. at 624-25). The protections of the Clause apply to both Members and Committees. *See Tenney v. Brandhove*, 341 U.S. 367, 376-79 (1951). And the Supreme Court has stated unequivocally that when the challenged "actions … fall within the sphere of legitimate legislative activity," legislators "shall not be questioned in any other Place about those activities since the prohibitions of the Speech or Debate Clause are absolute." *Eastland*, 421 U.S. at 501 (cleaned up).

### 2.    Information-Gathering and the Use of That Information Are Legislative Acts

The types of "legislative activity" protected by the Clause include much more than just speaking or debating on the House floor. The "cases have plainly not taken a literalistic approach

in applying the privilege. … Committee reports, resolutions, and the act of voting are equally covered… ." *Gravel*, 408 U.S. at 617. Relevant here, the Supreme Court has found that the "power to investigate" is within the legislative sphere. *See Eastland*, 421 U.S. at 504. That is so because a "legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change." *Id*. (citation omitted). To formulate legislation, or to understand the topics debated in Congress, legislators must have all relevant information. Thus, the "power of the Congress to conduct investigations is inherent in the legislative process." *Watkins v. United States*, 354 U.S. 178, 187 (1957); *see also United Transp. Union v. Springfield Terminal Ry. Co.*, No. 87-civ-0342 P, 1989 WL 38131, at *1 (D. Me. Mar. 13, 1989) ("The power to investigate" "is legitimately within the legislative sphere."). In fact, "[t]he scope of [Congress's] power of inquiry ... is as penetrating and far-reaching as the potential power to enact and appropriate under the Constitution." *Barenblatt v. United States*, 360 U.S. 109, 111 (1959).

Courts have consistently held that all modes of congressional information-gathering, from informal data collection to subpoenas, are legislative acts absolutely protected by the Clause. *See, e.g.*, *Ass'n of Am. Physicians & Surgeons v. Schiff*, 518 F. Supp. 3d 505, 518 (D.D.C. 2021) ("[I]nformation gathering letters constitute protected legislative acts."), *aff'd*, 23 F.4th 1028 (D.C. Cir. 2022); *Jud. Watch, Inc. v. Schiff*, 998 F.3d 989, 992 (D.C. Cir. 2021) ("[T]he Committee's issuance of subpoenas … was a legislative act protected by the Speech or Debate Clause."); *United Transp. Union*, 1989 WL 38131, at *2 (holding that Congress's "monitoring of … labor relations … should be protected, to the extent that monitoring means investigative or information-gathering activities"); *Colon Berrios v. Hernandez Agosto*, 716 F.2d 85, 90 (1st Cir. 1983) ("holding of … hearings … and the gathering of the evidence needed fell

within the legitimate sphere of legislative activity.").

Likewise, the Clause "affords Congress a 'privilege to use materials in its possession without judicial interference.'" *Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1086 (D.C. Cir. 2017) (citation omitted). Once information is in Congress's possession, courts may not curtail legislators' use of that information within the legislative sphere. *Doe v. McMillan* is particularly instructive here. In that case, a House committee investigated the Washington, D.C. public school system and published its findings in a report. 412 U.S. at 307-09. The report "specifically named students" who had "disciplinary problems." *Id*. at 308 & n.1. The parents sought an injunction to stop the report from being published, disseminated, or distributed. *Id*. at 309-10. The Supreme Court flatly rejected this request, stating that "it is plain to us that the complaint in this case was barred by the Speech or Debate Clause." *Id*. at 312. As the Court explained, the Clause "includes within its protections anything generally done in a session of the House by one of its members in relation to the business before it." *Id*. at 311 (cleaned up) (citations omitted). It thus held that "[a]lthough we might disagree with the Committee as to whether it was necessary, or even remotely useful, to include the names of individual children in the ... Committee Report, we have no authority to oversee the judgment of the Committee in this respect." *Id*. at 313. As a result, like a speech on the House floor, the issuance of "Committee reports … are equally covered… " by the Speech or Debate Clause. *Gravel*, 408 U.S. at 617.

Similarly, in *Hearst v. Black*, the plaintiff sought to enjoin a Senate Committee from "keeping" or "making any use of" allegedly illegally seized messages. 87 F.2d 68, 71 (D.C. Cir. 1936). As here, the plaintiff argued that the congressional investigation violated his Constitutional rights. *See id.* at 68-69. While the D.C. Circuit accepted his allegations as true and

even determined that the seizure of the messages had been unlawful, a unanimous panel held that the "universal rule … is that the legislative discretion in discharge of its [C]onstitutional functions, whether rightfully or wrongfully exercised, is not a subject for judicial interference." *Id*. at 71. This principle of non-interference in congressional investigations has been applied consistently. In *Brown & Williamson Tobacco Corp. v. Williams*, the D.C. Circuit declined to enforce subpoenas directed to Members of Congress seeking the return of allegedly stolen documents, recognizing that a "corollary—to [its] right to pursue investigations is Congress'[s] privilege to use materials in its possession without judicial interference." 62 F.3d 408, 416 (D.C. Cir. 1995) (citations omitted). Similarly, in *Ferrer*, the D.C. Circuit denied the plaintiff's request for an order directing the return or destruction of documents provided to a Senate subcommittee. 856 F.3d at 1086. *Ferrer* expressly reaffirmed both *Hearst* and *Brown & Williamson*, holding that if the Court were to issue such an order, it would "destroy" "the independence of the Legislature" and "invade" "the [C]onstitutional separation of powers." *Id.* (cleaned up).

### 3. The Speech or Debate Clause Requires Dismissal of Count I

Here, the Clause protects the legislative acts Plaintiff is challenging: specifically, the Committee's investigation, its fact-gathering in support thereof (i.e., the letters to MIT), and any legislative use of the acquired information (i.e., the Staff Report).

As to the Committee's investigation and its fact-gathering letters, they are legislative acts protected by the Clause. *See Ass'n of Am. Physicians & Surgeons*, 518 F. Supp. 3d at 518. Thus, Plaintiff's requests that this Court declare that the Committee's "actions violate Plaintiff's rights under the First Amendment to the United States Constitution," and enjoin Congressional Defendants from "[d]emanding, requesting or otherwise seeking (including through informal or 'voluntary' requests) the disclosure by MIT of … information referring or relating to Plaintiff," ECF 1 at 65, are demands for unconstitutional relief. Efforts by the Committee to obtain records

10

from MIT (or any other university) "constitute[] information gathering in an area of potential legislation and is therefore privileged." *United Transp. Union*, 1989 WL 38131, at *4 (D. Me. Mar. 13, 1989); *see also Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 530 (9th Cir. 1983) ("Obtaining information pertinent to potential legislation or investigation is one of the 'things generally done in a session of the House.'" (citation omitted)). For example, in a similar case, Columbia University students sued Columbia and the Congressional Defendants in the Southern District of New York to stop Columbia from producing student records to the Committee. *Khalil v. Trs. of Columbia Univ. in N.Y.C.*, No. 25-cv-2079, 2026 WL 775813, at *1 (S.D.N.Y March 19, 2026). But that court granted Congressional Defendants' motion to dismiss, holding that because the Committee's letter to Columbia requesting student records was part of its "power to investigate," "the Congressional defendants are immune from suit." *Id.* at *3-*4.

As to the Committee's use of information, this too is a legislative act because the Clause "affords Congress a 'privilege to use materials in its possession without judicial interference.'" *Ferrer*, 856 F.3d at 1086. Plaintiff's requests for the Court to enjoin Congressional Defendants from "[p]ublishing, distributing or otherwise disseminating any confidential information referring or relating to Plaintiff that has been obtained from MIT," or "accus[ing] [Plaintiff] of antisemitism," ECF 1 at 65, asks this Court to issue an unconstitutional order because no entity may dictate what Congress says or does within the legislative sphere, *see Hutchinson v. Proxmire*, 443 U.S. 111, 130 (1979) ("A [defamatory] speech by [Senator] Proxmire in the Senate would be wholly immune and would be available to other Members of Congress and the public."). In short, if Congress can use "information it had obtained by illegal means," *Dombrowski v. Burbank*, 358 F.2d 821, 824 (D.C. Cir. 1966) (describing the *Hearst* decision), *rev'd in part on other grounds sub nom. Dombrowski v. Eastland*, 387 U.S. 82 (1967) (per

11

curiam), or issue a report that specifically identifies children by name, *Doe*, 412 U.S. at 307-11, then this Court cannot constrain the Committee's use of an adult's lawfully acquired records.

### 4.      Plaintiff Cannot Overcome the Clause

Since federal courts have "limited jurisdiction," "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Thus, because the Clause is a jurisdictional concept, to overcome its immunity, Plaintiff "must show that it is inapplicable to avoid dismissal." *De la Torre v. Cassidy*, 800 F. Supp. 3d 54, 61 (D.D.C. 2025). Plaintiff cannot satisfy his burden.

Plaintiff tries the "'familiar argument—made in almost every Speech or Debate Clause case'—that the 'defendants' conduct cannot be legislative because it was, in [Plaintiff's] view, illegal.'" *Id.* at 65 (quoting *Rangel v. Boehner*, 785 F.3d 19, 24 (D.C. Cir. 2015)). But this argument "has been rejected time and again." *Rangel*, 785 F.3d at 24 ("An act does not lose its legislative character simply because a plaintiff alleges that it violated the House Rules or even the Constitution. Such is the nature of absolute immunity, which is—in a word—absolute." (citations omitted)); *see also Meadows v. Pelosi*, 639 F. Supp. 3d 62, 77 (D.D.C. 2022) ("allegations of unlawfulness—including claims that the legislative act violates the Constitution or a statute—also do not abrogate Speech or Debate Clause immunity").

Thus, Plaintiff's allegations that the Committee's investigation is "*a political vendetta with no legislative purpose whatsoever*," ECF 1 ¶ 4 (emphasis in original), or that "[t]here can be no legitimate legislative purpose when the Committee is violating the First Amendment," *id*. ¶ 187, are as futile as they are wrong. "If the mere allegation that a valid legislative act was undertaken for an unworthy purpose would lift the protection of the Clause, then the Clause

12

simply would not provide the protection historically undergirding it." *Eastland*, 421 U.S. at 508-09. "Instead of looking into the defendants' 'motive or intent,' the standard for determining whether an act is legislative 'turns on the nature of the act' itself." *Rangel*, 785 F.3d at 24 (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998)). In fact, "claims of improper motive … are precluded from consideration by the Court by the doctrine of legislative immunity." *Barcelo v. Agosto*, 876 F. Supp. 1332, 1349 (D.P.R. 1995), *aff'd sub nom. Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23 (1st Cir. 1996).

Regardless, the Committee *is* engaged in a legitimate investigation into antisemitism on college campuses, springing from its oversight of federal laws and funding, and its assessment of the need for new legislation. The Supreme Court has cautioned that courts must assume "that the action of the legislative body was with a legitimate object, if it is capable of being so construed, and [the court] ha[s] no right to assume that the contrary was intended." *McGrain v. Daugherty*, 273 U.S. 135, 178 (1927) (citation omitted). When committees assert they are investigating in aid of legislating, "the presumption should be indulged that this was the real object." *Id*.; *see also Eastland*, 421 U.S. at 508 ("[I]n determining the legitimacy of a congressional act we do not look to the motives alleged to have prompted it."); *Bragg v. Jordan*, 669 F. Supp. 3d 257, 269 (S.D.N.Y. 2023) ("The Court is required to presume that a congressional committee's stated legislative object is 'the real object.'" (citation omitted)), *appeal dismissed sub nom. Bragg v. Pomerantz*, No. 23-615, 2023 WL 4612976 (2d Cir. Apr. 24, 2023).[18]

---

[18] Plaintiff lists remarks made by Committee Members, ECF 1 ¶¶ 94-116, and asserts "this evidence would be admissible at trial," *id*. ¶ 95. But these statements are "irrelevant" to whether the Committee has a legislative purpose. *See Bragg*, 669 F. Supp. 3d at 269. Further, many of the statements were made during congressional hearings, *see id*. ¶¶ 99, 100, 106, 114, 115, and some while "speaking on the House floor," *id*. ¶ 116. Plaintiff also points to the votes of certain Members. *See id*. ¶¶ 112, 113. These allegations violate the core of the *Speech* or *Debate*

While Congressional "investigations must have a legitimate legislative purpose, … that inquiry is narrow and deferential: The Court asks only whether 'the investigation upon which the [Committee] had embarked concerned a subject on which 'legislation could be had.'" *Khalil*, 2026 WL 775813, at *3 (second alteration in original) (quoting *Eastland*, 421 U.S. at 506). "[T]he legitimate legislative purpose bar is a low one, and the purpose need not be clearly articulated." *Id*. (alteration in original) (quoting *Comm. on Ways & Means, U.S. House of Representatives v. U.S. Dep't of Treasury*, 575 F. Supp. 3d 53, 64 (D.D.C. 2021)). Indeed, "[i]n times of political passion, dishonest or vindictive motives are readily attributed to legislative conduct and as readily believed. Courts are not the place for such controversies. … The courts should not go beyond the narrow confines of determining that a committee's inquiry may fairly be deemed within its province." *Tenney*, 341 U.S. at 377-78.

Here, the Committee's investigation and its requests for information from MIT concern "a subject on which 'legislation could be had.'" *Eastland*, 421 U.S. at 506 (citation omitted). For one thing, because Congress holds the power of the purse, it may examine whether federal funds are flowing to institutions that are not taking adequate steps to remedy a hostile environment for Jewish students. Here, for example, Judge Stearns concluded that MIT's response to Sussman "was far from what should be expected by a university" yet also found that Sussman had not set forth a Title VI claim against MIT under current law. Order, *Sussman*, No. 25-cv-11826 (D. Mass.), ECF 75. That alone is a subject upon which "legislation could be had," *see Sabri v. United States*, 541 U.S. 600, 608 (2004) (stating that "[t]he power to keep a watchful eye on

---

Clause. Finally, because "[t]he government can say what it wishes and select the views that it wants to express" "it necessarily takes a particular viewpoint and rejects others, and thus does not need to maintain viewpoint-neutrality when its officers and employees speak about that venture." *NRA v. Vullo*, 602 U.S. 175, 187 (2024) (quotation marks and citations omitted).

14

expenditures and on the reliability of those who use public money is bound up with congressional authority to spend in the first place"), and records pertaining to how institutions treat and define antisemitism are plainly relevant to that inquiry. In fact, legislation has been introduced on this subject.[19] The Committee is also concerned with monitoring compliance with laws like Title VI and, if necessary, developing additional legislation that may stem the rising tide of antisemitism on college campuses. This project logically entails an evaluation of how schools are defining, analyzing, and addressing "antisemitism" and the impact of those decisions on Jewish students. "Congress may conduct inquiries 'into the administration of existing laws, studies of proposed laws, and [particularly relevant here,] "surveys of defects in our social, economic or political system for the purpose of enabling the Congress to remedy them."'" *Bragg*, 669 F. Supp. 3d at 267 (alteration in original) (citations omitted). In fact, showcasing the current robust debate in the House over the definition of antisemitism, at least two bills have been introduced in the House this Congress about this topic.[20]

In sum, as the district court in *Khalil* held: "the Committee articulated a valid legislative purpose for its [letter to Columbia]: To investigate targeting, harassment, and violence directed at Jewish students at Columbia, which receives federal funding." *Khalil*, 2026 WL 775813, at *4. The same is true here, and this "satisfies the Court's narrow scope of inquiry." *Id*.

### B.    Plaintiff Lacks Standing

"[S]tanding [is] 'an essential and unchanging part of the case-or-controversy requirement of Article III,'" and must be met for a court's jurisdiction to vest. *Horne v. Flores*, 557 U.S. 433,

---

[19] *See, e.g.*, PROTECT Jewish Student and Faculty Act, H.R. 406, 119th Cong. (2025), https://www.congress.gov/bill/119th-congress/house-bill/406/text.

[20] Antisemitism Awareness Act of 2025, H.R. 1007, 119th Cong. (2025), https://www.congress.gov/bill/119th-congress/house-bill/1007; Define to Defeat Act of 2025, H.R. 4087, 119th Cong. (2025), https://www.congress.gov/bill/119th-congress/house-bill/4087.

445 (2009) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). To establish it, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[T]he party invoking federal jurisdiction[] bears the burden of establishing these elements." *Id*. Plaintiff has failed to meet his burden.

*First*, "[t]o establish injury in fact, a plaintiff must show that he … suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 339 (citation omitted). Here, "plaintiff 'must allege that his speech was in fact chilled or intimidated.'" *Abany v. Fridovich*, 862 F. Supp. 615, 621 (D. Mass. 1994) (citation omitted). But Plaintiff seems emboldened rather than chilled; his X profile pins a post about the "mind infection,"[21] and he publicly announced the filing of this suit.[22] While Plaintiff broadly alleges that he "faces imminent and continuing harm, including a chilled ability to speak, teach and associate," ECF 1 ¶ 58, these generalized allegations do not "sufficiently allege[] an intention to engage in a particular course of conduct if not for [the challenged government action]," *Martin v. Evans*, 241 F. Supp. 3d 276, 282 (D. Mass. 2017). Plaintiff does not allege a single event he was or will be forced to skip, or a single thing that he did not or cannot say because of this alleged chilling. *See Tampa Bay Students for a Democratic Soc'y v. Rhea Law*, No. 25-cv-02752, 2026 WL 979964, at *9 (M.D. Fla. Apr. 10, 2026) (holding that

---

[21] Michel DeGraff (@MichelDeGraff), *X* (June 27, 2025, 2:24 PM), https://perma.cc/KP8K-KJTW. The Court may consider these social media posts because when jurisdiction is facially attacked under Rule 12(b)(1), the Court may look outside the complaint and consider extrinsic evidence. *See Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002).

[22] Michel DeGraff (@micheldegraff), *Instagram* (Apr. 3, 2026), https://perma.cc/Z49L-8K75.

16

failure to "allege a definite plan to engage in specific expressive activity at a fixed time and place" but instead "only a generalized 'desire' to participate . . . do[es] not support a finding of the 'actual or imminent' injury that our cases require" (citation omitted)). Given that the "standing inquiry [is] especially rigorous when reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional," *Blum v. Holder*, 744 F.3d 790, 797 (1st Cir. 2014), Plaintiff has failed to plead concrete and particularized injuries.[23]

*Second*, traceability requires "the injury … to be 'fairly … trace[able] to the challenged action of the defendant.'" *Lujan*, 504 U.S. at 560 (second and third alterations in original) (citation omitted). Here, Plaintiff's more specifically alleged injuries, such as his pay freeze, all pertain to MIT. *See* ECF 1 ¶¶ 21-24, 75-92, 203, 208. If Plaintiff believes that the Committee pressured MIT to take these actions, that is not clearly alleged, and more fundamentally, none of the Committee's letters or the Staff Report asked MIT to take any action against Plaintiff. Indeed, there is not a single allegation that MIT undertook any specific action against Plaintiff at the Committee's urging. Notably, the only letter that substantively concerns Plaintiff is the March 17 Letter, but it focuses on how MIT reached its antisemitism determination and post-dates all injuries Plaintiff alleges to have suffered. *See* ECF 1 ¶¶ 21-24, 75-92 (alleging injuries from December 2023 to February 2026). As a result, Plaintiff has not "plausibly allege[d] that [Defendants have] coerced" MIT to take these actions. *Dantzler*, 958 F.3d at 49. Furthermore, besides pointing the finger at MIT, Plaintiff also blames third parties. *See, e.g.*, ECF 1 ¶ 6 ("Will Sussman … led a social-media mob against Plaintiff"). But these allegations further confirm that

---

[23] Plaintiff also spills much ink on harm to others, but he "must allege that he, himself, is among the persons injured." *Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc.*, 958 F.3d 38, 47 (1st Cir. 2020) (quotation marks and citations omitted).

Plaintiff lacks standing because his injuries are "th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (alterations in original) (citation omitted).

*Finally*, Plaintiff has failed to plausibly allege redressability. "Redressability and causation problems often go hand in hand," and because Congressional Defendants did not cause Plaintiff's injuries, they are also not redressable through a judgment against Congressional Defendants. *United States v. Carroll*, 667 F.3d 742, 745-46 (6th Cir. 2012). As explained above, Plaintiff is explicit about how his harms were caused by MIT or Sussman, and so a judgment against Congressional Defendants will not resolve his issues (e.g., increase his pay). Further, "[a]lthough [Plaintiff] need not demonstrate that [his] entire injury will be redressed by a favorable judgment, [he] must show that the court can fashion a remedy that will at least lessen [his] injury." *Dantzler*, 958 F.3d at 49. But the Speech or Debate Clause absolutely protects Congressional Defendants' right to request and use information. *See supra* Section I.A. Thus, as a matter of law, Plaintiff cannot demonstrate that his alleged injuries are "likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338.

### C. Because Congressional Defendants Are Necessary Parties Under Rule 19, Count I Must Be Dismissed in Its Entirety

Count I is against all defendants. ECF 1 at 55-60. But because the claim against MIT is based on MIT's response to the Committee's requests, it rises or falls upon the allegations against the Committee. Therefore, Congressional Defendants are necessary parties under Federal Rule of Civil Procedure 19. However, as discussed above, the Speech or Debate Clause confers absolute immunity on Congressional Defendants. And because the Rule 19 factors weigh decisively against proceeding without them, Count I must also be dismissed as to MIT.

Rule 19(a) establishes a three-part test for determining whether joinder is required. First,

18

the Court must determine whether Congressional Defendants are required. *See Duggan v. Martorello*, 596 F. Supp. 3d 195, 203 (D. Mass. 2022). If so, the Court "must then determine whether joinder is feasible." *Id*. (citation omitted). And if "joinder is not feasible, the [C]ourt must turn to Rule 19(b) to 'determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.'" *Id*. (quoting Fed. R. Civ. P. 19(b)).

### 1.    Congressional Defendants Are Required Parties

A party is "required" if that party

> claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(B). Because the Committee's letters form the basis of Count I, the Committee has "an interest relating to the subject of the action" and is a required party. *Id*. Further, because Plaintiff seeks to enjoin MIT from sharing information with the Committee, the absence of Congressional Defendants from this suit would impair its ability to protect its interests, which are distinct from MIT's. Thus, Congressional Defendants are required parties.

### 2.    Congressional Defendants Are Immune from Suit

Congressional Defendants must be dismissed from this suit because they are absolutely immune under the Speech or Debate Clause. *See supra* Section I.A. Joinder is therefore not feasible under Rule 19. Rule 19(b) provides that if a party "who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." In similar cases where, as here, "a party is immune from suit, there is very little room for balancing of other factors set out in rule 19(b), because immunity may be viewed as one of those interests compelling by themselves." *Downing v. Globe Direct LLC*, 806 F. Supp. 2d 461, 470 (D. Mass.

19

2011) (quotation marks and citation omitted), *aff'd*, 682 F.3d 18 (1st Cir. 2012). Indeed, "immunity places a heavy thumb on the scale for dismissal." *Id.*

Courts, including those in this district, regularly dismiss cases under Rule 19 when a necessary party is immune from suit. *See, e.g.*, *Deschutes River All. v. Portland Gen. Elec. Co.*, 1 F.4th 1153, 1163 (9th Cir. 2021) ("[T]here is a 'wall of circuit authority' in favor of dismissing actions in which a necessary party cannot be joined due to tribal sovereign immunity… ." (alteration in original) (citation omitted)); *Downing*, 806 F. Supp. 2d at 470 ("Given the weight of the factors in favor of dismissal as well as Massachusetts's immunity from suit, … this case must be dismissed."). Speech or Debate Clause immunity should not function differently from sovereign immunity for Rule 19 purposes. Moreover, because the Clause is explicitly mentioned in the Constitution, if there is a difference between the two for Rule 19 purposes, the weight given to Congress under Rule 19(b) should be greater, not lesser, than that given to States, Tribes, or foreign nations. As a result, the Court should hold here for the Clause what the Supreme Court held in a case involving Rule 19 and foreign sovereign immunity: because "immunity is asserted, and the claims of the [Congressional Defendants] are not frivolous, dismissal of the action must be ordered [because] there is a potential for injury to the interests of [Congressional Defendants]." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 867 (2008).[24]

---

[24] Plaintiff's citation to *RNC v. Pelosi*, 602 F. Supp. 3d 1 (D.D.C. 2022), *vacated*, No. 22-5123, 2022 WL 4349778 (D.C. Cir. Sept. 16, 2022), ECF 1 ¶ 167, does not help him. In *RNC*, a Congressional Committee subpoenaed Salesforce for RNC documents. *Id.* at 10-14. The RNC sued both the Committee and Salesforce. *Id.* The court dismissed the Committee on Speech or Debate Clause grounds, *id.* at 17-21, and noted that as to Salesforce, it was *not* ruling on the Rule 19 issue, which "would require dismissal of the entire action if House Defendants were indispensable parties," "because the Court finds against the RNC on all its claims *on other grounds*," *id.* at 24 (emphasis added). *RNC* also distinguished what Plaintiff calls the "*AT&T* line of cases," ECF 1 ¶ 167, because in those cases, "the congressional defendants had intervened— that is, they were not 'made defendants' involuntarily—rendering the [Speech or Debate] Clause

20

### 3.     The Rule 19(b) Factors Favor Congressional Defendants

Even setting aside the overriding importance of immunity under Rule 19, the Rule 19(b) factors favor complete dismissal of Count I. These factors are:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice can be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder.

*Downing*, 806 F. Supp. 2d at 466 (citation omitted).

The first factor "largely duplicates the consideration that made a party necessary under Rule 19(a): a protectible interest that will be impaired or impeded by the party's absence." *Id*. at 468 (citations omitted). Since Congressional Defendants are required parties under Rule 19(a), a judgment in Plaintiff's favor on Count I would prejudice the Committee. Under the second factor, any prejudice to Congressional Defendants cannot be alleviated. Plaintiff seeks to prevent MIT from sharing information with the Committee. It is impossible to mitigate the impact of such an injunction. As to the third factor, even if Plaintiff would be satisfied with an order enjoining MIT from producing records to the Committee, which does not require Congressional Defendants' presence in the suit, this factor "cannot be given dispositive weight when the efficacy of the judgment would be at the cost of [Congressional Defendants'] rights to participate in litigation that critically affect their interests." *Wichita & Affiliated Tribes of Okla. v. Hodel*, 788 F.2d 765, 777 (D.C. Cir. 1986). As to the fourth factor, Plaintiff has another forum before which he could seek relief: Congress. Indeed, Plaintiff could have raised his concerns about the

---

inapplicable," *RNC*, F. Supp. 3d at 22. Finally, the *Khalil* court's cursory analysis of Rule 19, which failed to address the relevant Second Circuit test, is unpersuasive. 2026 WL 775813, at *9.

letters with the Committee before filing this suit.[25]

## II.   Count I Fails To State a Claim Upon Which Relief Can Be Granted

The Complaint also does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, the specific allegations must "nudge[] … claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Although well-pleaded facts must be accepted as true for purposes of deciding whether the Complaint states a claim for relief, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Here, for Count I, Plaintiff fails to plausibly allege that Congressional Defendants have unlawfully coerced MIT, or that MIT is a state actor.[26]

### A.   Plaintiff Does Not Plausibly Allege Coercion

Plaintiff alleges that the Committee's letters "jawbon[ed]" "MIT to suppress and punish student, faculty, and staff's protected speech that the Committee disfavors." ECF 1 ¶¶ 177-78.

---

[25] Even if Plaintiff does not have an adequate remedy, "this factor is outweighed by the … immunity from suit.'" *Downing*, 806 F. Supp. 2d at 466 (citations omitted).

[26] Plaintiff attempts to allege an Establishment Clause violation, claiming that the Committee is "endors[ing]" "a single faith's claims and assertions about Palestine." ECF 1 ¶ 189. Separate from its lack of clarity, this "[t]hreadbare recital[] … supported by mere conclusory statements" cannot state a claim under *Twombly* and *Iqbal*. *Back Beach Neighbors Comm. v. Town of Rockport*, 535 F. Supp. 3d 57 (D. Mass. 2021), *aff'd*, 63 F.4th 126 (1st Cir. 2023). It also substantively fails to make out a cognizable Establishment Clause violation. The government does not violate the Establishment Clause because it takes a position that "happens to coincide" with a religious tenet. *Harris v. McRae*, 448 U.S. 297, 319 (1980) (citation omitted) ("That the Judaeo-Christian religions oppose stealing does not mean that [the] … Government may not, consistent with the Establishment Clause, enact laws prohibiting larceny."). Here, given that the Committee's investigation is rooted in its monitoring of antisemitism on campuses and developing additional legislation that may address that problem, any coincidence with the beliefs of a particular faith is just that, not an endorsement of a particular religion.

"To state a claim that the government violated the First Amendment through coercion of a third party, a plaintiff must plausibly allege conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff's speech." *Vullo*, 602 U.S. at 191 (2024). Plaintiff's claim fails.

Plaintiff does not plausibly allege that Congressional Defendants coerced MIT to do anything. He alleges that MIT's disclosure of records to the Committee, followed by the Committee's public release of that information, "facilitat[es] doxing-style retaliation," which chills his speech. ECF 1 ¶ 185. Therefore, to plausibly allege that the Committee is seeking to indirectly suppress his speech through MIT's production of records, Plaintiff needs to allege that the Committee's request for those records is itself coercive. While Plaintiff alleges that "[r]eceiving a letter from the Committee is inherently coercive" and that it is "intended to convey a threat of adverse government action," ECF 1 ¶¶ 137, 185, he fails to explain how this is so, especially since he also admits that "MIT was not required to turn over … files" and "could have refused voluntary compliance" with the letters, *id*. ¶ 139. The most the letters can be read to do is to ask MIT to adhere to anti-discrimination law, which is not illegal. *Cf. Kennedy v. Warren*, 66 F.4th 1199, 1208-10 (9th Cir. 2023) (Senator Warren did not coerce Amazon into violating the First Amendment by warning it was "potentially unlawful" to publish a particular book). Indeed, other than unsupported hyperbolic innuendo, there is no plausible allegation that any of the Committee's letters (or the Staff Report) threatens MIT with a loss of funding (or any sanction) if MIT does not comply with the Committee's requests for information.

The letters and Staff Report also act only upon MIT; they do not ask MIT to take any action *against Plaintiff*, and the only documents that substantively discuss Plaintiff (the March 17 Letter and Staff Report) post-date his injuries. Thus, this case is entirely different from *Vullo*

23

where the government (the New York Department of Financial Services) indirectly acted on a private party (the NRA) through an intermediary (insurance companies that insured the NRA) in an unlawful manner (explicitly asking the companies to stop insuring the NRA in return for overlooking the companies' unrelated regulatory infractions). 602 U.S. at 181-85.

### B.    MIT Is Not a State Actor

MIT is a private university, *see* ECF 1 ¶ 27, and so the First Amendment does not apply barring state action, *see, e.g.*, *McGuire v. Reilly*, 386 F.3d 45, 60 (1st Cir. 2004). Plaintiff argues that MIT became a state actor by voluntarily complying with the Committee's request for documents, ECF 1 ¶ 68, or that "due to the Committee's coercive action[, MIT] … function[s] as a state actor itself," ECF 1 ¶ 163. Neither of these contradictory arguments have merit.

*First*, a private actor becomes a state actor when it becomes a "willful participant in joint activity with the State," *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001) (citation omitted), such as when the State is "entwined in [the private actor's] management or control," *id*. at 295-96. But there are no allegations here that the Committee manages or controls MIT just because it seeks records from MIT. If that was enough for state action, then *any* government inquiry into a private actor would turn that actor into a state actor once the private actor voluntarily complies. But that is not the law. More fundamentally, Plaintiff has not plausibly pled that the Committee is responsible for or so encouraged any actions taken by MIT against him such that they were the Committee's choice rather than MIT's. *See Blum v. Yaretsky*, 457 U.S. 991, 1004-05 (1982).

*Second*, while state action can occur when "the government compels the private entity to take a particular action," *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019), Plaintiff has not plausibly alleged that the Committee has compelled MIT to do anything, *see*

24

*supra* Section II.A. Plaintiff's unsupported assertion that "[r]eceiving a letter from the Committee is inherently coercive," *id.* ¶ 137, is incorrect. When the Committee sent a letter requesting records to the University of Pennsylvania (Penn), a court held that Penn was not a state actor because the Committee had not "coerced" it. *Fakhreddine v. Univ. of Pa.*, No. 24-cv-1034, 2025 WL 345089, at \*5-6 (E.D. Pa. Jan. 30, 2025). Indeed, the court did "not find th[e] language [of the letter] coercive and apparently, neither d[id] [p]laintiffs." *Id.* at \*5 (citing plaintiffs' concession in their complaint that the letter "is not a subpoena and has no legal compulsory effect"). Here too, the Complaint concedes that MIT could have declined to voluntarily comply with the Committee's letters. *See* ECF 1 ¶ 139. And while the March 17 letter states the Committee may exercise its subpoena power if MIT declines to comply with the Committee's request, *see* Decl., Ex. C at 3, the Committee has not taken that step, and MIT is under no obligation to respond to the March 17 letter. In any event, even MIT's compliance with a congressional subpoena would not constitute state action. *See, e.g.*, *Budowich v. Pelosi*, 610 F. Supp. 3d 1, 19-20 (D.D.C. 2022) (holding that "JPMorgan did not engage in state action when it complied with the congressional subpoena"). Given that *compulsory* legal process does not convert private actors into state actors, then *a fortiori* MIT responding to voluntary letters does not create state action.[27]

## CONCLUSION

For the foregoing reasons, Count I should be dismissed.

---

[27] Plaintiff's citation to *RNC* here, ECF 1 ¶ 190, is also not on point because like the Rule 19 issue discussed above, the court in *RNC* declined to address the state actor argument, 602 F. Supp. 3d at 24. Likewise, *Khalil* is inapposite; that court reached its state actor decision because the operative complaint there did not contain language about how the Committee's letters were voluntary. 2026 WL 775813, at \*12. The Complaint here contains such language, as discussed.

Respectfully submitted,

*/s/ Matthew B. Berry*
MATTHEW B. BERRY
   *General Counsel*
TODD B. TATELMAN
   *Deputy General Counsel*
ANDY T. WANG
   *Associate General Counsel*
ALICIA GARTEN
   *Assistant General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
matthew.berry@mail.house.gov

*Counsel for Congressional Defendants*

June 5, 2026

26

**CERTIFICATE OF SERVICE**

I, Matthew B. Berry, hereby certify that on June 5, 2026, I caused the foregoing document to be filed via this Court's CM/ECF system, which I understand caused service on all registered parties as identified on the Notice of Electronic Filing (NEF).


/s/ *Matthew B. Berry*
Matthew B. Berry