**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| Michel DeGraff, <br><br>     *Plaintiff*, <br><br> v. <br><br> Massachusetts Institute of Technology; <br> Tim Walberg in his official capacity as <br> the Chairman of the House Committee <br> on Education & Workforce; and <br> The House Committee on Education <br> & Workforce, <br><br>     *Defendants*. | Case No. 1:26-cv-11488-ADB <br><br> **Motion for Leave to File Excess Pages** <br> **Granted on June 2, 2026** |

<u>**MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**MASSACHUSETTS INSTITUTE OF TECHNOLOGY'S**</u>
<u>**MOTION TO DISMISS COUNT I OF THE COMPLAINT**</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

    A.   The Committee's Investigations Into Antisemitism on College Campuses and
         Its Initial Outreach to MIT ................................................................................. 2

    B.   The *Sussman* Litigation.................................................................................... 4

    C.   The Committee's Renewed Outreach to MIT..................................................... 4

    D.   DeGraff's First Amendment Claim .................................................................... 6

LEGAL STANDARD.......................................................................................................... 9

ARGUMENT ...................................................................................................................... 9

I.    DeGraff's First Amendment Claim Against MIT Should Be Dismissed. ........................... 10

    A.   MIT Is Not a State Actor. ................................................................................. 10

        1.   The Complaint Does Not Plausibly Allege Compulsion. ............................. 11

        2.   The Complaint Does Not Plausibly Allege Joint Action. ............................. 15

    B.   DeGraff Lacks Standing. .................................................................................. 16

    C.   DeGraff Fails to State a Claim Under *Vullo*. .................................................. 21

    D.   If the Congressional Defendants Are Dismissed on Speech-or-Debate Grounds,
         DeGraff's First Amendment Claim Cannot Proceed Against MIT Alone. ...................... 23

II.   Leave to Amend Should Be Denied................................................................................... 25

CONCLUSION.................................................................................................................... 25

**TABLE OF AUTHORITIES**

**CASES**

*Abordo v. Mobi PCS*, 684 F. App'x 631 (9th Cir. 2017)................................................14

*Acton Co. of Massachusetts v. Bachman Foods, Inc.*, 668 F.2d 76 (1st Cir. 1982) ......................24

*Allen v. Wright*, 468 U.S. 737 (1984) ................................................................20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...............................................................9, 13, 16

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963)................................................21

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)...............................................9

*Benavidez v. Gunnell*, 722 F.2d 615 (10th Cir. 1983) ................................................16

*Blum v. Yaretsky*, 457 U.S. 991 (1982)...............................................................10, 11

*Budowich v. Pelosi*, 610 F. Supp. 3d 1 (D.D.C. 2022) ................................................14

*Butler v. Goldblatt Bros., Inc.*, 589 F.2d 323 (7th Cir. 1978).........................................16

*Children's Health Defense v. Meta Platforms, Inc.*, 112 F.4th 742 (9th Cir. 2024),
    *cert. denied*, 145 S. Ct. 2846 (2025)............................................................22

*Clapper v. Amnesty International USA*, 568 U.S. 398 (2013)......................................17, 19, 20

*Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24 (1st
    Cir. 2000) ...............................................................................................2

*Downing v. Globe Direct LLC*, 806 F. Supp. 2d 461 (D. Mass. 2011), *aff'd*, 682
    F.3d 18 (1st Cir. 2012).............................................................................23

*Estiverne v. Esernio-Jenssen*, 910 F. Supp. 2d 434 (E.D.N.Y. 2012) ..........................................16

*Fakhreddine v. University of Pennsylvania*, No. 24-cv-1034, 2025 WL 345089
    (E.D. Pa. Jan. 30, 2025), *aff'd*, 2026 WL 74593 (3d Cir. Jan. 9, 2026) ...........................12, 19

*FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024)................................................20

*Flagg Bros., Inc. v. Brooks*, 436 U.S. 149 (1978) ..........................................................11

*Fluent v. Salamanca Indian Lease Authority*, 928 F.2d 542 (2d Cir. 1991)................................23

*Haley v. City of Boston*, 657 F.3d 39 (1st Cir. 2011).................................................2

*Hatch v. Department for Children, Youth and Their Families*, 274 F.3d 12 (1st Cir. 2001) ...................................................................................................................25

*Khalil v. Trustees of Columbia University in the City of New York*, No. 25-cv-2079, 2026 WL 775813 (S.D.N.Y. Mar. 19, 2026) ....................................12, 14, 15, 21, 22

*Kowalski v. Gagne*, 914 F.2d 299 (1st Cir. 1990).........................................................4

*Laird v. Tatum*, 408 U.S. 1 (1972)...............................................................17, 18, 19

*Lombard v. Louisiana*, 373 U.S. 267 (1963) ................................................11, 13, 15

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982)................................................ 15-16

*Lyman v. Baker*, 954 F.3d 351 (1st Cir. 2020)..............................................................2

*Manhattan Community Access Corp. v. Halleck*, 587 U.S. 802 (2019) ................10, 11, 12, 14, 15

*National Rifle Association of America v. Vullo*, 602 U.S. 175 (2024) ...........................2, 10, 21, 22

*Osediacz v. City of Cranston*, 414 F.3d 136 (1st Cir. 2005)..........................................18

*Ozonoff v. Berzak*, 744 F.2d 224 (1st Cir. 1984) ........................................................18

*Peterson v. City of Greenville*, 373 U.S. 244 (1963) ............................................11, 12, 13

*Raytheon Co. v. Continental Casualty Co.*, 123 F. Supp. 2d 22 (D. Mass. 2000)..........................9

*Reddy v. Foster*, 845 F.3d 493 (1st Cir. 2017)...............................................................9

*Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008) ............................................24

*Republican National Committee v. Pelosi*, 602 F. Supp. 3d 1 (D.D.C. 2022), *vacated*, 2022 WL 4349778 (D.C. Cir. Sept. 16, 2022) .............................................14

*Scotto v. Almenas*, 143 F.3d 105 (2d Cir. 1998) ..........................................................16

*Sullivan v. Carrick*, 888 F.2d 1 (1st Cir. 1989)...............................................17, 18, 19

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014).........................................16, 17

Text Order Granting Motions to Dismiss, *Sussman v. MIT*, No. 25-cv-11826 (D. Mass. Jan. 5, 2026), ECF No. 75 .................................................................4

*Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826 (9th Cir. 1999).........................22

*United States v. Mumme*, 985 F.3d 25 (1st Cir. 2021)....................................................14

*United States v. Perez-Montanez*, 202 F.3d 434 (1st Cir. 2000) ......................................14

iii

*Wiener v. MIB Group, Inc.*, 86 F.4th 76 (1st Cir. 2023)................................................................16

**CONSTITUTIONAL PROVISIONS AND STATUTES**

U.S. Const. art. I, § 6, cl. 1.........................................................................................................23

20 U.S.C. § 1232g(a)(4)(B)(i)....................................................................................................21

**OTHER AUTHORITIES**

Amended Complaint, *Sussman v. MIT*, No. 25-cv-11826 (D. Mass. Sept. 17, 2025),
ECF No. 17 ..............................................................................................................................4

DeGraff Motion to Dismiss, *Sussman v. MIT*, No. 25-cv-11826 (D. Mass. Oct. 8,
2025), ECF No. 48 ...................................................................................................................7

Fed. R. Civ. P. 19(a)(1)(B) ........................................................................................................24

Fed. R. Civ. P. 19(a)(1)(B)(i).................................................................................................23, 24

Fed. R. Civ. P. 19(b) ...............................................................................................................23, 24

Michel DeGraff (@MichelDeGraff), X, x.com/MichelDeGraff .....................................................8

Isabelle Zhang & Elizabeth Mehler, *'Congress is Trying to Repress My Teaching':
MIT Professor Sues Congress for Antisemitic Label* (The Bay State Banner,
May 13, 2026), https://baystatebanner.com/2026/05/13/congress-is-trying-to-
repress-my-teaching-mit-professor-sues-congress-for-antisemitic-label/ ................................8

**INTRODUCTION**

Plaintiff Michel DeGraff is a faculty member at the Massachusetts Institute of Technology ("MIT") who has used personal social media, media engagement, and court filings to express his views on the conflict in the Middle East, including his criticism of Israel and support for Palestinians. In this lawsuit, DeGraff alleges that MIT, a private educational institution, has transformed into a state actor through its responses to document requests from the U.S. House of Representatives Committee on Education & Workforce (the "Committee"), and that both MIT and the Committee have thereby violated his First Amendment rights. But DeGraff's own Complaint defeats his First Amendment theory at every turn.

DeGraff's First Amendment claim fails at the outset because MIT is a private university, not a state actor. To hold MIT liable under the First Amendment, DeGraff must plausibly allege that the Committee coerced MIT into producing documents about him or that MIT acted jointly with the Committee to violate his First Amendment rights. He does neither. To the contrary, DeGraff's Complaint concedes that the Committee has sought only "voluntary" productions from MIT, Compl. ¶139, which forecloses DeGraff's argument that MIT has been transformed into a state actor. Because the First Amendment does not apply to private actors engaged in purely private conduct, DeGraff's attempt to hold MIT liable for violating his constitutional rights fails.

DeGraff's First Amendment claim fails for several additional reasons that each warrant dismissal. DeGraff lacks Article III standing because his alleged injuries—a generalized chill on his speech, the speculative risk of doxing and harassment by unnamed third parties, and the potential disclosure of unspecified records—are neither concrete nor traceable to MIT. Indeed, the fact that DeGraff has continued to speak publicly and prolifically on the very subjects he claims have been chilled only underscores the speculative nature of his alleged injuries. Moreover,

DeGraff's First Amendment claim also fails on the merits because he has not plausibly alleged the kind of threat of adverse government action required under *National Rifle Association of America v. Vullo*, 602 U.S. 175 (2024), and because MIT, as the alleged *subject* of government coercion, is not a proper defendant. Finally, if DeGraff's claims against the Committee and its Chairman are dismissed on Speech-or-Debate grounds, DeGraff's First Amendment claim could not proceed against MIT alone because the Congressional Defendants are required parties under Rule 19.

Count I of DeGraff's Complaint against MIT should be dismissed with prejudice.

## BACKGROUND[1]

### A.    The Committee's Investigations Into Antisemitism on College Campuses and Its Initial Outreach to MIT

Following the October 7, 2023 terrorist attack by Hamas on Israel, the Committee opened investigations into reports of antisemitism at multiple colleges and universities across the United States. *See* ECF No. 1 ("Compl."), ¶¶17, 20, 42-43, 51, 54. According to its October 31, 2024 report (the "October 2024 Report"), the Committee, as part of its investigations, "issued document requests to nine universities[] and was forced to issue subpoenas to two universities in response to their failure to produce requested documents and information voluntarily."[2]

---

[1] Although MIT disputes many of DeGraff's assertions, the Court must accept well-pleaded factual allegations in DeGraff's Complaint as true solely for the purposes of this Motion, except where they are contradicted by "documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley v. City of Bos.*, 657 F.3d 39, 46 (1st Cir. 2011) (motion pursuant to Rule 12(b)(6)); *see Lyman v. Baker*, 954 F.3d 351, 359 (1st Cir. 2020) (noting that "the same basic principles apply" under Rule 12(b)(1) (citation omitted)). MIT has attached copies of pertinent documents incorporated by reference in the Complaint as exhibits to this Motion. *See Clorox Co. P.R. v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 32 (1st Cir. 2000) ("[I]n reviewing the complaint, [this Court] 'may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment.'" (citation omitted)).

[2] *See* Committee on Education & Workforce, U.S. House of Representatives, Majority Staff Report, *Antisemitism on College Campuses Exposed* at 5 (Oct. 31, 2024) (attached as Ex. A); Compl. ¶43 & n.32 (linking to the October 2024 Report).

2

MIT, "a private educational institution located in Cambridge, Massachusetts," Compl. ¶27, was one of the nine universities that received such document requests. On March 8, 2024, the Committee sent MIT a letter (the "March 2024 Request") seeking voluntary production of "documents and communications" on various subjects. *Id.* ¶42.[3] The letter identified several "incidents and developments at MIT" that apparently prompted these requests. Ex. B at 2, 5-7. Among a list of assertedly "antisemitic remarks" made by "MIT faculty," the letter identified several public statements by DeGraff. *Id.* at 5-6. These included two posts DeGraff had made on his personal social media page and one article he had published in MIT's publicly available Faculty Newsletter. *See id.* at 6 & nn.35-37.

The March 2024 Request sought eighteen categories of documents, asking MIT to "please produce the [specified] items" "[t]o assist the Committee in understanding antisemitism at MIT and [MIT's] response." *Id.* at 8, *see also id.* at 8-12. DeGraff alleges that, in response, MIT provided the Committee with certain responsive "internal documents … pertaining to the disciplining of students involved in pro-Palestinian activism." Compl. ¶¶45, 140.[4] According to the Complaint, the Committee relied on some of those documents in generating the October 2024 Report. *See id.*; *see also* Ex. A at 81 & nn.433-437. But DeGraff does not allege either that MIT produced documents about him in response to this Request or that the October 2024 Report discussed him or his conduct.

---

[3] *See* Letter from Virginia Foxx, Chairwoman, Committee on Education & Workforce, U.S. House of Representatives, to Dr. Sally Kornbluth, President, MIT, and Mark P. Gorenberg, Chair of the Corporation, MIT (Mar. 8, 2024) (attached as Ex. B); Compl. ¶42 & n.30 (linking to the March 2024 Request).

[4] In each of its voluntary productions to Congress, MIT took care to protect the privacy of its students and faculty by anonymizing and aggregating data and, where relevant, redacting individuals' names and identifying information.

B.      **The *Sussman* Litigation**

On June 25, 2025, former MIT student William Sussman and MIT instructor Lior Alon (alongside an organizational plaintiff) filed suit in this District against both DeGraff and MIT. *See Sussman v. MIT*, No. 25-cv-11826 (D. Mass.) (Stearns, J.) ("*Sussman*"). In an amended complaint filed on September 17, 2025, Sussman and Alon alleged, *inter alia*, that DeGraff "engaged in discrimination, harassment, and retaliation against Plaintiffs for being Jewish and/or Israeli." *Sussman*, Am. Compl. ¶¶433, 439 (ECF No. 17).[5] The amended complaint identified numerous statements by DeGraff about his views on the conflict in the Middle East, antisemitism, and related topics—including articles DeGraff published in *Le Monde* diplomatique and *TheTech.com*, posts on DeGraff's personal social media accounts, and alleged statements DeGraff made in emails and in class. *See id.* ¶¶97-103, 116, 118, 120-121, 129, 131-132, 135, 140-141, 143-149. The amended complaint also added allegations by a John Doe plaintiff, unrelated to DeGraff. *See, e.g.*, *id.* ¶20. On January 5, 2026, the district court dismissed all claims against DeGraff and all claims against MIT related to DeGraff. *See Sussman*, Text Order Granting Mots. to Dismiss (ECF No. 75). MIT did not move to dismiss all of John Doe's claims, and the litigation continues with respect to those claims. *See, e.g.*, *Sussman*, Text Entry Scheduling Order (ECF No. 76) (Jan. 6, 2026).

C.      **The Committee's Renewed Outreach to MIT**

On December 11, 2025, for the first time during the 119th Congress (which convened on January 3, 2025, and will conclude on January 3, 2027), the Committee sent MIT a letter signed by its new Chairman, Tim Walberg, with information requests related to allegations of

---

[5] "[F]ederal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." *Kowalski v. Gagne*, 914 F.2d 299, 305-06 (1st Cir. 1990).

antisemitism on MIT's campus. *See* Compl. ¶42.[6] Like the prior request, the December 2025 Request identified several instances of alleged antisemitic conduct about which the Committee expressed "concern[]," including some references to DeGraff's public statements, drawn from the amended complaint in *Sussman* and from public reporting about the *Sussman* litigation. Ex. C at 1-2 & nn.2-3, 5-8. The letter asked MIT to "[p]lease produce" three categories of materials that the Committee asserted would "aid [it] in considering whether potential legislative changes, including legislation to specifically address antisemitic discrimination, are needed." *Id.* at 1-3.

On March 17, 2026, the Committee published another report asserting that "colleges and universities nationwide" had failed to adequately address antisemitism on their campuses.[7] The March 2026 Report claimed that "[f]aculty members have played a significant role in legitimizing and amplifying antisemitism on college campuses," Ex. D at 6, and included an account of Sussman's allegations against DeGraff among a list of seven "case stud[ies]" supporting that claim, *id.* at 4, 17-18. In its account regarding DeGraff, the March 2026 Report cited several publicly available sources, including court filings in *Sussman*, statements DeGraff made on Instagram and in an article he published in *Middle East Eye*, and other reporting on DeGraff's statements. *See id.* at 17-18 & nn.126-139.

The same day it issued the March 2026 Report, the Committee sent MIT a third letter requesting a series of documents relating to DeGraff in particular.[8] The Committee's letter took

---

[6] *See* Letter from Tim Walberg, Chairman, Committee on Education & Workforce, U.S. House of Representatives, to Dr. Sally Kornbluth, President, MIT (Dec. 11, 2025) (the "December 2025 Request") (attached as Ex. C); Compl. ¶43 & n.31 (linking to the December 2025 Request).

[7] *See* Committee on Education & Workforce, U.S. House of Representatives, Majority Staff Report, *How Campuses Became Hotbeds: The Rise of Radical Antisemitism on College Campuses* at 6 (Mar. 17, 2026) (the "March 2026 Report") (attached as Ex. D); Compl. ¶1 (referencing the March 2026 Report).

[8] *See* Letter from Tim Walberg, Chairman, Committee on Education & Workforce, U.S. House of Representatives, to Dr. Sally Kornbluth, President, MIT (Mar. 17, 2026) (the "March 2026

issue with what it deemed "MIT's repeated refusal to adequately respond to the Committee's requests." Ex. E at 1; *see id.* at 2 (asserting that "MIT has refused to provide the Committee with documents or communications meaningfully responsive to Committee requests"). The letter noted MIT's position that the "ongoing litigation against [MIT] on the DeGraff matter"—*i.e.*, *Sussman*— prevented MIT from producing certain requested materials. *Id.* at 3. Nevertheless, the Committee "reiterat[ed]" its prior requests for certain "documents and communications," and indicated that "[i]f MIT fails to provide these documents, the Committee will pursue the use of compulsory process." *Id.* at 3-4; *see* Compl. ¶57 (alleging that the Committee "ask[ed] for production of documents about Plaintiff, [and] threaten[ed] to escalate with subpoenas if MIT does not oblige").

### D.    DeGraff's First Amendment Claim

On March 28, 2026, DeGraff filed this lawsuit against the Committee, Chairman Walberg in his official capacity (together, the "Congressional Defendants"), and MIT. DeGraff asserts four causes of action: a claim against all defendants alleging that the Committee has coerced MIT into violating DeGraff's First Amendment rights (Count I); and three state-law claims against MIT only for violations of the Massachusetts Civil Rights Act (Count II), Massachusetts General Law chapter 151B (Count III), and for breach of contract (Count IV). Compl. ¶¶ 171-208. On May 19, 2026, this Court granted MIT's unopposed motion to bifurcate motion-to-dismiss briefing to allow consideration of the First Amendment claim at the outset of this litigation. *See* Order, ECF No. 30.

DeGraff's First Amendment claim is premised on the Committee's actions. He alleges that the Committee, "under the guise of investigating antisemitism, is pressuring MIT to suppress speech critical of Israel and supportive of Palestinian rights" by disclosing information that could

---

Request") (attached as Ex. E); Compl. ¶57 (alleging the March 2026 Request's existence "[o]n information and belief").

6

"be used to identify and single out particular speakers and associations for stigma, harassment, and professional retaliation." Compl. ¶¶13, 15. DeGraff asserts that, without an injunction barring the Committee from making further information requests (and barring MIT from responding to any such requests), he "faces imminent and continuing harm, including a chilled ability to speak, teach and associate; heightened risk of doxing, harassment and retaliation; and the ongoing threat that confidential records will be obtained and used to facilitate future adverse actions against him." *Id.* ¶58; *see id.*, Prayer for Relief ¶B. He further alleges that he "reasonably fears" that "additional [document] productions will be sought and leveraged to identify … [him]," *id.* ¶61, and that if MIT were to produce documents in response to such requests and if those documents mention him, such productions "risk … a chilling effect on [his] association" by exposing him to a risk of harassment by third parties, *id.* ¶176; *see id.* ¶172 (documents could "identify and expose [DeGraff] and chill his protected speech and associations"); *id.* ¶¶39-40, 58 (similar).

DeGraff claims these risks are heightened due to his "public profile." *Id.* ¶39. The Complaint, which was publicly filed in DeGraff's own name, describes that public profile in detail: DeGraff acknowledges that he has publicly shared his views on "Gaza or Israel … [via] his own social media" accounts and in published articles, *id.* ¶¶147, 17 n.15; that he is a named defendant in *Sussman*, which identified many of his public statements in publicly filed documents, *see id.* ¶26; p. 4, *supra*; and that he was identified "by name" in the Committee's March 2026 Report, Compl. ¶¶4, 53-54.[9] Even after filing this lawsuit, DeGraff has expressed his views frequently and forcefully, including by giving an interview to *The Bay State Banner* as recently as May 13, 2026,

---

[9] DeGraff's motion-to-dismiss filing in *Sussman* likewise acknowledged that he "has … ceaselessly advocated for the well-being and political rights of the Palestinian people, and has criticized Israel for its seizure of their land and violence against them." *Sussman*, DeGraff Mot. to Dismiss at 9 (ECF No. 48) (Oct. 8, 2025).

7

and posting regularly on his personal social media account.[10] Notably, DeGraff's Complaint does not allege that whatever (unspecified) materials MIT may possess contain information about him or his views that are not already publicly known.

Despite directing the majority of his allegations at the Committee, DeGraff also brings his First Amendment claim against MIT, alleging that MIT has acceded "to the Committee's coercive action against [it]" and has thereby "become a state actor." Compl. ¶163. In DeGraff's view, "[r]eceiving a letter from the Committee is inherently coercive." *Id.* ¶137. And he adds that "[t]he Committee's letter[s] [to MIT] echo[] other actions by this Administration which has used similarly false assertions of antisemitism to cancel federal grants and contracts to universities, revoke their ability to accept international students, and even to threaten to remove their accreditation." *Id.* But the Complaint does not allege that any Executive agency has taken or threatened to take any such actions against MIT in particular.

DeGraff alleges in a conclusory manner that "the Committee has repeatedly pressured MIT to suppress and punish student, faculty and staff's protected speech that the Committee disfavors— particularly speech regarding Palestinian human rights." *Id.* ¶178. And he asserts that MIT was "bullied, threatened and pressured" into turning documents over to the Committee. *Id.* ¶¶141-142; *see id.* ¶¶138-139, 141 (alleging that MIT was "apparently intimidated" into disclosing documents by the Committee's "informal coercion"); *id.* ¶181 (similar). But while DeGraff's state-action theory is premised on his claim that the Committee "coerc[ed]" MIT into responding to its requests,

---

[10] *See* Isabelle Zhang & Elizabeth Mehler, *'Congress is Trying to Repress My Teaching': MIT Professor Sues Congress for Antisemitic Label*, The Bay State Banner, May 13, 2026, https://baystatebanner.com/2026/05/13/congress-is-trying-to-repress-my-teaching-mit-professor-sues-congress-for-antisemitic-label/; *see also, e.g.*, Michel DeGraff (@MichelDeGraff), X, x.com/MichelDeGraff (reflecting, as of 11:00 am ET on June 5, 2026, over 20 posts and reposts since May 1, 2026 discussing the Israeli-Palestinian conflict, anti-Zionism, and related topics).

*id.* ¶163, he acknowledges that any actions on MIT's part have been "voluntary," *id.* ¶139. Indeed, DeGraff alleges that "MIT was not required to turn over confidential information and faculty files to the Committee," but instead "could have refused voluntary compliance." *Id.*; *see id.* ¶140 (alleging that "MIT has chosen to comply with the Committee's requests").

## LEGAL STANDARD

Under Rule 12(b)(6), a complaint must be dismissed if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In assessing plausibility, the court does not credit "mere conclusory statements" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Under Rule 12(b)(1), a court must dismiss any claim over which it lacks subject-matter jurisdiction, including where the plaintiff lacks standing. *Reddy v. Foster*, 845 F.3d 493, 499-500 (1st Cir. 2017). And under Rule 12(b)(7), a complaint must be dismissed if a party that is required to be joined in the action under Rule 19 cannot be joined. *See, e.g.*, *Raytheon Co. v. Cont'l Cas. Co.*, 123 F. Supp. 2d 22, 32 (D. Mass. 2000).

## ARGUMENT

DeGraff's First Amendment claim against MIT should be dismissed for multiple independently dispositive reasons. *First*, DeGraff's attempt to hold MIT liable under the First Amendment fails because MIT is a private university, not a state actor. *Second*, DeGraff lacks standing because the injuries he alleges are speculative, conclusory, and dependent on a chain of contingent actions by independent actors, and so do not satisfy the requirements of Article III. *Third*, even if DeGraff could satisfy these threshold requirements, he has failed to state a First Amendment claim on the merits because he has not plausibly alleged that the Committee's requests for voluntary document productions conveyed a "threat of adverse government action" against

9

MIT for the purpose of "punish[ing] or suppress[ing] [DeGraff]'s speech" as required by *National Rifle Association of America v. Vullo*, 602 U.S. 175 (2024). *Fourth*, if DeGraff's First Amendment claim against the Congressional Defendants is dismissed on Speech-or-Debate grounds, DeGraff's First Amendment claim cannot proceed against MIT because the Congressional Defendants are required and indispensable parties under Rule 19.

**I.      DeGraff's First Amendment Claim Against MIT Should Be Dismissed.**

**A.      MIT Is Not a State Actor.**

DeGraff's First Amendment claim fails for a "threshold[,] … fundamental" reason: MIT is a private entity that is not subject to the First Amendment. *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019). "[T]he Free Speech Clause prohibits only *governmental* abridgment of speech" and so does not apply to private entities. *Id.* at 808. That principle—the "state-action doctrine"—"enforc[es] th[e] constitutional boundary between the governmental and the private." *Id.* Here, DeGraff acknowledges that MIT is "a private university." Compl. ¶142. And while the Supreme Court has held that "a private entity can qualify as a state actor in a few limited circumstances," *Manhattan Cmty. Access*, 587 U.S. at 809, those narrow exceptions do not apply here. The government has neither (1) "compel[led] [MIT] to take a[ny] particular action," nor (2) "act[ed] jointly with [MIT]," *id.*[11] The operative question under either exception is whether the challenged action—here, responding to the Committee's requests—"must in law be deemed to be that of the [government]." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (collecting cases). Because DeGraff has failed to make the requisite showing, his attempt to hold MIT liable under the First Amendment fails. *See Manhattan Cmty. Access*, 587 U.S. at 808-09.

---

[11] The Supreme Court has also found state action in a third circumstance: "when the private entity performs a traditional, exclusive public function." *Manhattan Cmty. Access*, 587 U.S. at 809. The Complaint does not invoke this third test, and it is plainly not implicated on the facts here.

### 1.    The Complaint Does Not Plausibly Allege Compulsion.

DeGraff first alleges that the Committee's requests to MIT amount to compulsion that transforms MIT from a private university into a state actor. *See, e.g.*, Compl. ¶¶72, 137, 142, 163, 185. To establish state action on this theory, DeGraff must demonstrate that the Committee has "exercised [its] coercive power" over MIT, *Blum*, 457 U.S. at 1004, in such a way that MIT is "compel[led]" to produce materials about him, *Manhattan Cmty. Access*, 587 U.S. at 809. That is a high bar. The dispositive question is whether the government's actions have "removed th[e relevant] decision from the sphere of private choice," *Peterson v. City of Greenville*, 373 U.S. 244, 248 (1963), such that "the choice must in law be deemed to be that of the [government]," *Blum*, 457 U.S. at 1004; *see Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 157 (1978) (asking whether the challenged action "may fairly be attributed to the [government]"). Accordingly, the Supreme Court has found private action was compelled for purposes of transforming a private party into a state actor only where a statute "require[s]" or "mandate[s]" the "precise[]" conduct at issue, *Peterson*, 373 U.S. at 248 (city ordinance mandating segregated restaurants), or where the government issues "an official command which has at least as much coercive effect as" a requirement found in positive law, *Lombard v. Louisiana*, 373 U.S. 267, 271, 273 (1963) (statement of city officials directing local police to ensure that "no … sit-in demonstrations … will be permitted," among other similar statements).

DeGraff's own allegations foreclose a finding of state action based on compulsion. As DeGraff acknowledges, the Committee has sought only "voluntary compliance," and, to the extent MIT has produced responsive materials, the Complaint alleges that it was MIT's "cho[ice] to comply" with requests that it "could have refused." Compl. ¶¶139-140. DeGraff's prayer for relief confirms the point: He seeks to enjoin MIT from "*[v]oluntarily* … producing … information … relating to [him] to the Committee absent a subpoena or other lawful compulsory process." *Id.*,

11

Prayer for Relief ¶B(c) (emphasis added). The Complaint thus fails to plausibly allege that the Committee has "compel[led]" MIT to produce documents in the sense contemplated by the state-action doctrine, *Manhattan Cmty. Access*, 587 U.S. at 809, and the First Amendment therefore does not reach the Complaint's allegations of a "*private* abridgment of speech," *id.* at 808.

*Fakhreddine v. University of Pennsylvania* is directly on point. No. 24-cv-1034, 2025 WL 345089 (E.D. Pa. Jan. 30, 2025), *aff'd*, 2026 WL 74593 (3d Cir. Jan. 9, 2026). There, the plaintiffs alleged that the University of Pennsylvania ("Penn") violated their First Amendment rights by "deci[ding] to comply with a Congressional documents request." *Id.* at *1. Yet because the Committee's request—like its requests to MIT here—asked Penn to "*please produce* the [requested] items," and thus sought voluntary compliance, the court found the request was not "coercive" in the sense that it transformed Penn, a private university, into a state actor. *Id.* at *5. In reaching that conclusion, the court emphasized that the plaintiffs' own allegations undermined their theory of compulsion because they had alleged that "Penn [was] *voluntarily* complying" and that the request "ha[d] *no legal compulsory* effect." *Id.* (citations omitted). So too here. *See* Ex. B at 8 ("please produce" the requested records); Ex. C at 2 (same); *see also* Compl. ¶57 (alleging the March 2026 Request "*ask[ed]*" MIT for documents (emphasis added)); Ex. E at 3 ("The Committee is reiterating its [earlier] request[s]."). And as in *Fakhreddine*, DeGraff's Complaint acknowledges that "MIT was not required to turn over [the requested] information." Compl. ¶139. That concession ends the inquiry. *See Peterson*, 373 U.S. at 248; *accord Fakhreddine*, 2025 WL 345089, at *5-6; *see also Khalil v. Trs. of Columbia Univ. in City of New York*, No. 25-cv-2079, 2026 WL 775813, at *14 (S.D.N.Y. Mar. 19, 2026) (recognizing that there is no state action when a university merely "respond[s] to [the Committee's] oversight at arm's length").

DeGraff's attempts to avoid this straightforward conclusion are unavailing. He first asserts that "[r]eceiving a letter from the Committee is inherently coercive." Compl. ¶137. But that "conclusory" assertion goes nowhere, *Iqbal*, 556 U.S. at 681 (conclusory assertions are "not entitled to be assumed true" on a motion to dismiss), not least because, if DeGraff's theory were correct, it would mean that any private entity that receives a letter from the Committee (or, perhaps, from any arm of government) would automatically become a state actor. That is not the law. More to the point, DeGraff has not alleged that the letters were coercive in the legally relevant sense— namely, that they "removed" the decision of whether to comply with the Committee's requests "from the sphere of [MIT's] private choice," *Peterson*, 373 U.S. at 248. Nor could he, because, again, he acknowledges that MIT had a "cho[ice]" about whether "to comply" with the Committee's requests. Compl. ¶140.

Nor can DeGraff plead this exception by relying on other actions by the current Administration involving the cancellation of federal grants and contracts to universities, the revocation of their ability to accept international students, or the threatened loss of their accreditation. *See* Compl. ¶137. DeGraff's allegations about threats made to *other universities* do not establish that *MIT* was threatened with any such actions—by the Committee or anyone else— and DeGraff's Complaint contains no such allegations about MIT specifically. Absent such allegations, DeGraff does not come close to alleging the sort of "official command" with "at least as much coercive effect as" a positive-law obligation, *Lombard*, 373 U.S. at 273, that would be necessary to show the requisite compulsion.[12]

---

[12] The only "threat[]" that DeGraff's Complaint identifies is the Committee's statement in its March 2026 Request that "[i]f MIT fails to provide these documents, the Committee will pursue the use of compulsory process"—namely, a subpoena. Ex. E at 3-4; *see* Compl. ¶57 (alleging that the Committee "threaten[ed] to escalate with subpoenas"). But a threat to issue compulsory process in the future does not render private actions taken in the absence of such process "compel[led]"

That reality distinguishes this case from *Khalil v. Trustees of Columbia University in the City of New York*, No. 25-cv-2079, 2026 WL 775813 (S.D.N.Y. Mar. 19, 2026), on which DeGraff relies, *see* Compl. ¶¶142, 190.[13] *Khalil* involved a Committee request for documents like the ones here and in *Fakhreddine*, but it also involved far more: The plaintiffs in *Khalil* relied on allegations regarding several Executive agencies that froze "approximately $400 million in federal grants to Columbia" and then "sent Columbia a letter outlining 'a set of policy changes as a precondition for continued federal funding'"—policy changes that included adopting the Administration's preferred "definition of antisemitism." 2026 WL 775813, at *1-2 (record citations omitted). Plaintiffs then alleged that after Columbia complied with those Executive demands—including by implementing the requested policy changes—the Committee announced its approval on social media: "Columbia FOLDS." *Id.* at *2. Given these specific allegations of coordination between the Executive and Legislative branches to exert pressure, including via threats to withhold hundreds of millions of dollars in federal funding, in order to extract particular policy changes allegedly designed "to stifle plaintiffs' disfavored political advocacy," *id.* at *5, the district court

---

for purposes of the state-action inquiry. *Manhattan Cmty. Access*, 587 U.S. at 809. Indeed, courts have held that even the compulsion to comply with a subpoena does not transform the subpoena target into a state actor. *See, e.g.*, *Budowich v. Pelosi*, 610 F. Supp. 3d 1, 19 (D.D.C. 2022); *Abordo v. Mobi PCS*, 684 F. App'x 631, 632 (9th Cir. 2017). This comports with how courts treat consent and compulsory process in other contexts—for example, an officer's statement that she intends to obtain a warrant if consent to search is not freely given does not render that consent impermissibly coerced under the Fourth Amendment. *See, e.g.*, *United States v. Mumme*, 985 F.3d 25, 36-38 (1st Cir. 2021) (collecting cases); *United States v. Perez-Montanez*, 202 F.3d 434, 438-39 (1st Cir. 2000) ("Nor is there anything … unduly coercive about a statement of an intention to seek other means to obtain access to property.").

[13] DeGraff's Complaint also invokes *Republican Nat'l Comm. v. Pelosi*, 602 F. Supp. 3d 1, 22-23 (D.D.C. 2022) (*RNC*), *vacated*, 2022 WL 4349778 (D.C. Cir. Sept. 16, 2022). *See* Compl. ¶190. But the court there simply "assume[d] without deciding" that the private entity was a state actor. *RNC*, 602 F. Supp. 3d at 24. So that decision does not help DeGraff.

found that, unlike in *Fakhreddine*, the allegations in *Khalil* described a situation in which the university was not simply "responding to government oversight at arm's length," *id.* at *11-14.

None of the factors the court found sufficient to allege compulsion in *Khalil* are present here. It is true that, as in *Khalil*, the Committee here has "ask[ed]" MIT to produce documents within its possession. Compl. ¶¶3, 57. But unlike in *Khalil*, there are no allegations establishing that the Committee's "ask[s]," *id.*, were, in fact, "official command[s]" with the force of law, *Lombard*, 373 U.S. at 273-74. Unlike in *Khalil*, DeGraff does not allege that either the Committee or any Executive Branch actor, alone or working together, has threatened MIT with adverse consequences such as the specific loss of federal funding or any similar sanction. Nor, unlike the allegations in *Khalil*, does DeGraff allege that MIT has altered any policies at the government's express request. All in all, because DeGraff's Complaint alleges that MIT "could … refuse[] voluntary compliance" with the Committee's requests, Compl. ¶139, DeGraff has failed to plausibly allege that the Committee has "compel[led] [MIT] to take a[ny] particular action," and thus failed to plausibly allege that MIT is a state actor, *Manhattan Cmty. Access*, 587 U.S. at 809.

### 2.    The Complaint Does Not Plausibly Allege Joint Action.

Nor has DeGraff plausibly alleged state action on the basis that the Committee has "act[ed] jointly with [MIT]." *Manhattan Cmty. Access*, 587 U.S. at 809.

At the outset, DeGraff advances this theory, if at all, only in conclusory fashion. He alleges without factual support that "MIT and the Committee ha[ve] aided and worked in concert with [each] other to violate [DeGraff]'s rights." Compl. ¶165; *see id.* ¶164 (alleging "a meeting of purposes between MIT and the Committee to engage in conduct to deprive [DeGraff] of constitutional rights"). Those allegations simply restate the legal standard for joint action, which asks whether MIT was "a willful participant in joint activity with the [Committee]." *Lugar v.*

15

*Edmondson Oil Co.*, 457 U.S. 922, 941 (1982) (citation omitted). Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In any event, courts have long recognized the commonsense principle that "[t]he mere furnishing of information to [the state] does not constitute joint action … which renders a private citizen" a state actor. *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983); *see, e.g.*, *Scotto v. Almenas*, 143 F.3d 105, 114-15 (2d Cir. 1998) (no state action where party simply "cooperated with [an agency] investigation"); *Butler v. Goldblatt Bros., Inc.*, 589 F.2d 323, 327 (7th Cir. 1978) (same where party "did [no]thing more than supply information" to police); *see also Estiverne v. Esernio-Jenssen*, 910 F. Supp. 2d 434, 442 (E.D.N.Y. 2012) ("Mere cooperation with a state official or investigatory agency is insufficient to establish state action."). That principle applies here too. DeGraff's bare assertion that MIT accommodated some of the Committee's document requests—while resisting others, *see* Ex. E at 1-3—accordingly fails to establish joint action.

### B.    DeGraff Lacks Standing.

DeGraff's Complaint also fails for another fundamental reason: Because he has not alleged that he will suffer a cognizable injury caused by MIT, DeGraff lacks standing to bring this claim against MIT in the first place.

"To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)); *see Wiener v. MIB Grp., Inc.*, 86 F.4th 76, 84 (1st Cir. 2023). The complained-of injury must be "concrete and particularized and actual or imminent, not conjectural or hypothetical."

16

*Susan B. Anthony List*, 573 U.S. at 158 (citation and quotation marks omitted). And where, as here, the plaintiff seeks prospective relief to prevent a "future injury," that "threatened injury [must be] certainly impending, or," put another way, there must be "a substantial risk that the [alleged] harm will occur." *Id.* (citations and quotation marks omitted). To survive a motion to dismiss, the plaintiff must allege "concrete facts showing that the defendant's actual action[s] ha[ve] caused [a] substantial risk of harm." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013).

Applying these principles, DeGraff fails to demonstrate standing. He asserts that the Committee's requests may lead MIT to disclose information about him that could lead to injuries falling into three categories: "[1] a chilled ability to speak, teach and associate; [2] heightened risk of doxing, harassment and retaliation; and [3] the ongoing threat that confidential records will be obtained and used to facilitate future adverse actions against [DeGraff]." Compl. ¶58. All of those alleged injuries are "too speculative for Article III purposes." *Clapper*, 568 U.S. at 409.

***Chill.*** DeGraff's generalized claim that the Committee's requests have "chilled [his] ability to speak, teach and associate," Compl. ¶58, does not support standing, especially when read in light of the rest of the Complaint.

To plausibly allege a First Amendment violation, DeGraff "must allege that his speech was in fact chilled or intimidated" by the Committee's requests. *Sullivan v. Carrick*, 888 F.2d 1, 4 (1st Cir. 1989). The Supreme Court has made clear that "[a]llegations of a subjective 'chill'" do not suffice; DeGraff must instead identify a "specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972). That requirement is not satisfied by the mere possibility that the Committee "might in the future take some other and additional action detrimental to [DeGraff]." *Id.* at 11. Instead, he must allege some facts that would "reasonably lead[] him to believe he must conform his conduct" to the Committee's preferred views to avoid

17

harm. *Ozonoff v. Berzak*, 744 F.2d 224, 229-30 (1st Cir. 1984). To do so, DeGraff must identify some "regulations, proscriptions, or compulsions"—some actual adverse consequence—to which he would likely be "subject[ed]" if he spoke his mind. *Id.* at 229 (quoting *Laird*, 408 U.S. at 11).

To start, DeGraff has not alleged that he has curtailed his speech or associations in any way out of fear that MIT will oblige the Committee's requests, and so has not plausibly alleged that he is "in fact chilled." *Sullivan*, 888 F.2d at 4. Just the opposite: Notwithstanding the Committee's requests, DeGraff has continued to make his views on the Middle East conflict public. *See* note 10, *supra*. That DeGraff has continued to speak and associate freely and publicly even as he alleges that the Committee has trained its attention on him confirms that he "[him]sel[f] [is] not chilled" and thus "lack[s] that 'personal stake in the outcome of the controversy' essential to standing." *Laird*, 408 U.S. at 13 n.7 (plaintiffs "cast considerable doubt" on their own theory of injury by asserting that they were "not people … who are cowed and chilled" but rather were willing "to open themselves up to public investigation and public scrutiny"); *accord Osediacz v. City of Cranston*, 414 F.3d 136, 142 (1st Cir. 2005) (no standing where plaintiff did "not assert that the Policy takes away her appetite for expressing herself or chills her speech in any cognizable way").

Nor has DeGraff alleged the requisite "specific present objective harm or a threat of specific future harm." *Osediacz*, 414 F.3d at 142 (quoting *Laird*, 408 U.S. at 13-14). Because DeGraff does not allege that either the Committee or MIT have threatened to "subject" him to any "regulations, proscriptions, or compulsions," *Ozonoff*, 744 F.2d at 229, his alleged chill rests solely on his "knowledge that [the Committee is] engaged in" its investigation and his "concomitant fear that, armed with the fruits of those activities, the [Committee] might in the future take some other and additional action detrimental to [him]." *Laird*, 408 U.S. at 11. That is not sufficient. Such "generalized [and] speculative apprehensiveness that the [Committee] may at some future date

18

misuse the [requested] information in some way that would cause [him] direct harm" cannot create standing. *Id.* at 13-14; *see Sullivan*, 888 F.2d at 4 (no standing based on asserted chill from receipt of official letter threatening disciplinary proceedings because the alleged "chilling effect [wa]s speculative, indirect [and] too remote").

***Doxing and harassment.*** DeGraff's assertion that the Committee's requests expose him to a "heightened risk of doxing, harassment and retaliation," Compl. ¶58, likewise fails.

*First*, this claimed injury is not "certainly impending" because it relies on a "speculative chain of possibilities" based on "speculation about the unfettered choices made by independent actors not before the courts." *Clapper*, 568 U.S. at 414 & n.5 (citation and quotation marks omitted); *see id.* at 413 (noting "reluctance to endorse standing theories that rest on speculation about the decisions of independent actors"). Once again, *Fakhreddine* is directly on point. Like DeGraff, the plaintiffs in *Fakhreddine* alleged that Penn violated their First Amendment rights by "deci[ding] to comply with a Congressional documents request." 2025 WL 345089, at *1. The court held that the plaintiffs lacked standing because they had not "adequately … allege[d] any injury rising above speculative harm." *Id.* at *4. The court explained:

> Plaintiffs' claims rely on the following chain of possibilities: (1) *if* Penn sends unredacted documents containing personal identifiable information to the Committee; (2) *if* the Committee publishes that unredacted information to the public; (3) *if* unknown and unnamed third parties obtain that information; then (4) those third parties *may* use the information to harass Plaintiffs. This is not enough to make out standing.

*Id.* DeGraff's theory is precisely the same: that if MIT sends documents to the Committee and the Committee makes those documents public, unnamed third parties will engage in "doxing, harassment and retaliation" against him. Compl. ¶58; *see, e.g.*, *id.* ¶¶48, 73, 130. Because that theory of injury, as in *Fakhreddine*, depends on a hypothetical "chain of possibilities" involving

19

"choices made by independent actors," it is too "speculative" to satisfy the requirements of Article III. *Clapper*, 568 U.S. at 414 & n.5 (citation omitted).

*Second*, and relatedly, these claimed injuries are not "caused by [MIT]'s conduct" in potentially supplying the Committee with documents in the future. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024). Because the "doxing, harassment and retaliation" DeGraff fears, Compl. ¶58, would be carried out by third parties, DeGraff must demonstrate that those "third parties will likely react in predictable ways that in turn will likely injure [him]." *Alliance*, 602 U.S. at 383 (citation and quotation marks omitted). And "[t]he causation requirement also rules out attenuated links—that is, where the [challenged] action is so far removed from its distant (even if predictable) ripple effects that the plaintiffs cannot establish Article III standing." *Id.* Here, DeGraff has not alleged any facts demonstrating that it is both "predictable" and "likely," *id.*, that third parties will choose to harass or retaliate against him *because of* MIT's decision to disclose additional (unidentified) materials to the Committee—rather than, say, because of the information about DeGraff that is already public. As a result, the independent "decisions" on which DeGraff's theory of standing depends are "sufficiently uncertain to break the chain of causation between [his claimed] injury and the challenged … action." *Allen v. Wright*, 468 U.S. 737, 759 (1984).

**Disclosure of confidential materials.** Finally, to the extent DeGraff alleges an injury related to the disclosure of "confidential records" to the Committee, Compl. ¶58—as opposed to some third parties' use of those materials to injure him—that claim fares no better. DeGraff does not identify what records he considers confidential. Nor does he allege that any such records would be responsive to the Committee's requests or that MIT is likely to provide them. Nor, having failed to allege those basic facts, has DeGraff plausibly alleged any freestanding right protecting against the mere disclosure of information to the Committee. *Id.*

20

That fact distinguishes this case from *Khalil*, in which the district court found that four student plaintiffs had standing to seek to enjoin Columbia from complying with the Committee's document requests. 2026 WL 775813, at *7-9. The analysis in *Khalil* turned on the fact that the specific student disciplinary records the Committee sought were protected under the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g: "[D]rawing reasonable inferences in plaintiffs' favor," the court held that the student plaintiffs had "plausibly alleged that the[] anonymity" that FERPA promised "w[ould] not be protected" if Columbia turned over the records. *Khalil*, 2026 WL 775813, at *9. But DeGraff is a faculty member, not a student, so FERPA—which DeGraff's Complaint repeatedly invokes, *see* Compl. ¶¶40, 62, 190—does not apply. *See* 20 U.S.C. § 1232g(a)(4)(B)(i).

### C.   DeGraff Fails to State a Claim Under *Vullo*.

DeGraff's First Amendment claim also fails on the merits. DeGraff's Complaint invokes the Supreme Court's decision in *Vullo* for the proposition that "[g]overnment officials cannot attempt to coerce private parties in order to punish or suppress views that the government disfavors." Compl. ¶66 (quoting 602 U.S. at 180); *see id.* ¶173. But *Vullo* expressly holds that, "[t]o state a claim that the government violated the First Amendment through coercion of a third party, a plaintiff must plausibly allege conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff's speech." 602 U.S. at 191. In *Vullo* itself, that element was satisfied because the plaintiff alleged that a state insurance regulator "threatened to wield her power" by bringing "enforcement actions" against insurers who refused to cease interacting with the disfavored speaker. *Id.* at 192; *see id.* at 194; *see also Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 68 (1963) (finding coercion based upon executive officials' "thinly veiled threats to institute criminal proceedings against

21

[booksellers] if they d[id] not" cease selling disfavored materials). The common thread is a threat to deploy governmental power *punitively*—for example, to impose sanctions or withdraw benefits—against the intermediary if it fails to suppress the plaintiff's disfavored speech.

DeGraff has not plausibly alleged anything comparable here. The Committee sought *voluntary* document productions from MIT, and DeGraff's Complaint alleges no "conduct" on the Committee's part indicating that failure to accommodate those requests would subject MIT to any sanction, funding cut, or other "adverse government action." *Vullo*, 602 U.S. at 191; *contra Khalil*, 2026 WL 775813, at *1-2 (finding coercion where Executive agency defendants cancelled or paused approximately $400 million in federal grants to Columbia and announced a review of over $5 billion in federal grant commitments). Nor has DeGraff plausibly alleged that any of the Committee's actions have been aimed, as in the typical jawboning case, at having *MIT* "suppress [DeGraff]'s speech," *Vullo*, 602 U.S. at 191. Accordingly, because the Complaint does not plausibly allege that the Committee has coerced MIT into suppressing DeGraff's First Amendment rights, DeGraff has failed to state a First Amendment claim.

Even if DeGraff could somehow establish that the Committee coerced MIT, MIT still would not be a proper defendant for a claim under *Vullo*. The *Vullo* framework involves three parties: (a) a state actor that coerces (b) a private intermediary to take adverse action against (c) a disfavored speaker. *See* 602 U.S. at 187-91. On DeGraff's theory, MIT is the coerced intermediary—*not* the coercer. As the Ninth Circuit has recognized, there is "reason to doubt that a purely private actor … which was the *victim* of the alleged coercion, would be the appropriate defendant, rather than the government officials responsible for the coercion." *Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 759 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 2846 (2025); *see Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 838 (9th Cir. 1999) ("[O]nly

22

the state actor, and not the private party, should be held liable for the constitutional violation that resulted from the state compulsion."). DeGraff cannot maintain that the Committee coerced MIT into surrendering his records while simultaneously seeking to hold MIT liable for complying with that coercion.

**D.    If the Congressional Defendants Are Dismissed on Speech-or-Debate Grounds, DeGraff's First Amendment Claim Cannot Proceed Against MIT Alone.**

Finally, the Congressional Defendants have moved to dismiss Count I on the basis that they are immune from suit under the Speech-or-Debate Clause. *See* ECF No. 37 at 6-15, 18-22; *see also* U.S. Const. art. I, § 6, cl. 1. If the Court agrees, it should likewise dismiss DeGraff's First Amendment claim against MIT because the Congressional Defendants are required parties under Federal Rule of Civil Procedure 19. That claim thus cannot proceed against MIT in their absence.

Rule 19(a) defines a "[r]equired [p]arty" as one who "claims an interest relating to the subject of the action and is so situated that disposing of the action in the [party]'s absence may … as a practical matter impair or impede the person's ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B)(i). Such a party "is required to be joined if feasible." Fed. R. Civ. P. 19(b). "When joinder is *not* feasible," Rule 19(b) directs courts to balance several factors to "determine whether … the action should proceed among the existing parties or should be dismissed." *Id.* (emphasis added). But courts have long "held that when a[] [required] party is immune from suit, there is very little room for balancing [the] other [Rule 19(b)] factors … because immunity may be viewed as one of those interests compelling by themselves." *Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542, 548 (2d Cir. 1991) (citations and quotation marks omitted) (collecting cases); *accord Downing v. Globe Direct LLC*, 806 F. Supp. 2d 461, 469-70 (D. Mass. 2011), *aff'd*, 682 F.3d 18 (1st Cir. 2012). The Supreme Court has stated the rule even more plainly: "A case may not proceed

23

when a required-entity sovereign is not amenable to suit." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 867 (2008).

Those principles require dismissing Count I in its entirety if this Court determines that the Congressional Defendants are immune from suit under the Speech-or-Debate Clause. The Congressional Defendants are required parties under Rule 19(a): Because DeGraff's Count I asserts that the Committee's document requests to MIT violate his First Amendment rights, *see* Compl. ¶¶178, 182-188, the Congressional Defendants plainly "claim[] an interest relating to the subject of the action," Fed. R. Civ. P. 19(a)(1)(B). And because DeGraff seeks to enjoin MIT from responding to those requests, the Congressional Defendants' absence from this action would "impair or impede [their] ability to protect th[at] interest." Fed. R. Civ. P. 19(a)(1)(B)(i). Accordingly, because the Congressional Defendants are required parties, if they "cannot be joined" by virtue of immunity under the Speech-or-Debate Clause, *id*. 19(b), the "case may not proceed" against MIT in their absence, *Pimentel*, 553 U.S. at 867.

Ultimately, DeGraff's First Amendment dispute is with the Congressional Defendants, not with MIT. Every element of Count I depends on the Committee's conduct: It is the Committee's allegedly impermissible motives, and the Committee's alleged coercion of MIT, that form the basis of DeGraff's claim. MIT is the *subject* of that alleged coercion based on DeGraff's theory. In those circumstances, adjudicating DeGraff's First Amendment claim against MIT alone makes little practical sense, as it would require the Court to pass judgment on the constitutionality of the Congressional Defendants' actions without affording them an opportunity to defend those actions on the merits. That is precisely the oddity that Rule 19 seeks to prevent. *See, e.g.*, *Acton Co. of Mass. v. Bachman Foods, Inc.*, 668 F.2d 76, 78 (1st Cir. 1982) (Rule 19 "furthers several related policies, including … the interest of the present parties in obtaining complete and effective relief

24

in a single action, and the interest of absentees in avoiding the possible prejudicial effect of deciding the case without them"). If the Speech-or-Debate Clause forecloses the Congressional Defendants' participation in this litigation, the appropriate remedy is dismissal of Count I in its entirety, not a proceeding in which the real parties in interest are absent.

## II.    Leave to Amend Should Be Denied.

Because the record now includes all three document requests issued by the Committee to MIT, no additional factual allegations could establish that MIT is a state actor, that MIT's further disclosure of documents to the Committee will cause DeGraff nonspeculative injuries that are traceable to MIT's actions rather than to the independent actions of third parties, or that this case may proceed in the Congressional Defendants' absence. Thus, leave to amend should be denied as futile. *See Hatch v. Dep't for Child., Youth & Their Fams.*, 274 F.3d 12, 19 (1st Cir. 2001).

**CONCLUSION**

For the foregoing reasons, Count I as against MIT should be dismissed with prejudice.

Date: June 5, 2026

Respectfully submitted,

MASSACHUSETTS INSTITUTE
OF TECHNOLOGY

 */s/ Ishan K. Bhabha*

Daniel J. Cloherty (BBO# 565772)
  dcloherty@clohertysteinberg.com
  617.481.0610
Alexandra Arnold (BBO# 706208)
  aarnold@clohertysteinberg.com
  617.481.0610
CLOHERTY & STEINBERG LLP
One Financial Center
  Suite 1120
Boston, MA 02111

Ishan K. Bhabha (*pro hac vice*)
  IBhabha@jenner.com
  202.637.6327
Lauren J. Hartz (*pro hac vice*)
  LHartz@jenner.com
  202.637.6363
Elizabeth Henthorne (*pro hac vice*)
  BHenthorne@jenner.com
  202.637.6367
JENNER & BLOCK LLP
1099 New York Avenue, N.W.,
  Suite 900
Washington, DC 20001

25

**CERTIFICATE OF SERVICE**

I certify that a true copy of this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on June 5, 2026.

 */s/ Ishan K. Bhabha*
Ishan K. Bhabha