# EXHIBIT E



MAJORITY MEMBERS:

TIM WALBERG, MICHIGAN, *Chairman*

JOE WILSON, SOUTH CAROLINA
VIRGINIA FOXX, NORTH CAROLINA
GLENN THOMPSON, PENNSYLVANIA
GLENN GROTHMAN, WISCONSIN
ELISE M. STEFANIK, NEW YORK
RICK W. ALLEN, GEORGIA
JAMES COMER, KENTUCKY
BURGESS OWENS, UTAH
LISA C. MCCLAIN, MICHIGAN
MARY E. MILLER, ILLINOIS
JULIA LETLOW, LOUISIANA
KEVIN KILEY, CALIFORNIA
MICHAEL RULLI, OHIO
JAMES C. MOYLAN, GUAM
ROBERT F. ONDER, JR., MISSOURI
RYAN MACKENZIE, PENNSYLVANIA
MICHAEL BAUMGARTNER, WASHINGTON
MARK HARRIS, NORTH CAROLINA
MARK B. MESSMER, INDIANA
RANDY FINE, FLORIDA

## COMMITTEE ON EDUCATION AND WORKFORCE

U.S. HOUSE OF REPRESENTATIVES
2176 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6100

MINORITY MEMBERS:

ROBERT C. "BOBBY" SCOTT, VIRGINIA,
*Ranking Member*

JOE COURTNEY, CONNECTICUT
FREDERICA S. WILSON, FLORIDA
SUZANNE BONAMICI, OREGON
MARK TAKANO, CALIFORNIA
ALMA S. ADAMS, NORTH CAROLINA
MARK DESAULNIER, CALIFORNIA
DONALD NORCROSS, NEW JERSEY
LUCY MCBATH, GEORGIA
JAHANA HAYES, CONNECTICUT
ILHAN OMAR, MINNESOTA
HALEY STEVENS, MICHIGAN
GREG CASAR, TEXAS
SUMMER L. LEE, PENNSYLVANIA
JOHN MANNION, NEW YORK
ADELITA GRIJALVA, ARIZONA

March 17, 2026

Dr. Sally Kornbluth
President
Massachusetts Institute of Technology
77 Massachusetts Avenue
Room 3-208
Cambridge, MA 02139

Dear President Kornbluth,

The Committee on Education and Workforce (Committee) continues to investigate antisemitism at the Massachusetts Institute of Technology (MIT or Institute). MIT's repeated refusal to adequately respond to the Committee's requests is unacceptable and obstructs Committee oversight and legislative efforts. Therefore, I write to reiterate the Committee's request for certain documents pertaining to antisemitism at the Institute.

On March 8, 2024, then-Committee Chair Virginia Foxx opened an investigation into antisemitism at MIT and requested documents related to certain administrators, faculty, and programs.[1] The Committee cited, among other incidents, alleged antisemitic online activity by MIT Professor of Linguistics Michel DeGraff.[2] Several months later, DeGraff allegedly harassed a Jewish student online and over email, threatening to use the student as a "case study" of what he described as a Zionist "mind infection."[3] In response to the student complaint, MIT's Institute Discrimination and Harassment Response Office (IDHR) concluded that there was not a "sufficient basis to conclude that Prof. DeGraff's decision to use [the student's] social media/email exchanges as a case study was based on [the student's] Jewish identity."[4] The office further stated that DeGraff's claims "relate[] to his views of the Israeli government[.]"[5]

---

[1] Letter from the Hon. Virginia Foxx, Chairwoman, H. Comm. on Educ. & the Workforce, to Dr. Sally Kornbluth, President, Massachusetts Institute of Technology et al. (March 8, 2024) (on file with Comm.).
[2] *Id.*
[3] Kassy Akiva, *'Mind Infection': Meet The MIT Linguistics Professor Who Begged To Teach An Anti-Israel Seminar*, THE DAILY WIRE (November 18, 2024), https://www.dailywire.com/news/mind-infection-meet-the-mit-linguistics-professor-who-begged-to-teach-an-anti-israel-seminar.
[4] *Sussman v. Massachusetts Institute of Technology*, 1:25-cv-11826, (D. Mass. 2025).
[5] *Id.*

As the Committee has repeatedly stated, understanding how and why entities, such as IDHR, make these determinations, and how the Institute's leaders deliberate about and respond to the harassment of Jewish students, is critical to the Committee's legislative efforts related to antisemitism, including potential reforms related to Title VI of the *Civil Rights Act of 1964*. Institutions of higher education are grappling with how to define and respond to antisemitism, including incidents in which Jewish students are targeted or harassed under the guise of antizionism. Nowhere is this clearer than IDHR's determination in the DeGraff case. The documents on this matter that the Committee has received thus far—all of which are publicly available, despite Committee requests—are grossly insufficient for assessing legislative reforms to address antisemitism.

On November 17, 2025, Committee staff emailed MIT following up on the March 8, 2024, letter and subsequent developments. Specifically, the Committee requested the production of "documents and communications referring or relating to these individuals or programs and antisemitism (this could include keywords such as Israel, Palestine, Zionism, etc.) in the possession of the Office of the President, Office of the Provost, Division of Student Life, Institute Community and Equity Office, MIT Human Resources, or IDHR, as per requests #1 and #8."[6] The Committee requested MIT begin by providing "[d]eterminations or decisions by IDHR, MIT Human Resources, or other adjudicative bodies at MIT pertaining to antisemitism complaints against Michel DeGraff," among other documents.[7]

Since that time, MIT has refused to provide the Committee with documents or communications meaningfully responsive to Committee requests. On December 9, 2025, MIT sent the Committee an unhelpful email narrative that shed no light on the Committee's requests instead of providing meaningful documentation.[8] To underscore the importance and urgency of its requests, the Committee sent the Institute a letter and accompanying email on December 11, 2025, specifically requesting "[a]ll documents and communications in the possession of IDHR since October 7, 2023, referring or relating to Michel DeGraff and antisemitism, Jews, Judaism, Israel, Palestine, or Zionism."[9]

Three weeks after the letter's production deadline, the Institute produced three publicly available documents on the matter to the Committee on January 9, 2025.[10] This failure to materially respond raises serious concern about MIT's good faith compliance with the Committee's investigation.[11] Despite this failure, the Committee has repeatedly explained its rationale for its requests to MIT.[12] On January 26, 2026, the Committee further specified its requests to obtain

---

[6] Email from Jenna Berger, Investigative Counsel of the H. Comm. on Educ. & Workforce (Nov 17, 2025, 02:48 PM EST) (on file with the Comm.).

[7] Email from Jenna Berger, Investigative Counsel, H. Comm. on Educ. & Workforce, to Jonathan J. Skladany, Partner, Jenner & Block (Nov 17, 2025, 02:48 PM EST) (on file with the Comm.).

[8] Email from Jonathan J. Skladany, Partner, Jenner & Block, to Jenna Berger, Investigative Counsel, H. Comm. on Educ. & Workforce (Dec 9, 2025 05:13 PM EST) (on file with the Comm.).

[9] Letter from the Hon. Tim Walberg, Chairman, H. Comm. on Educ. & Workforce, to Dr. Sally Kornbluth, President, Massachusetts Institute of Technology (December 11, 2025) (on file with Comm.).

[10] *Sussman v. Massachusetts Institute of Technology*, 1:25-cv-11826, (D. Mass. 2025).

[11] *See* Letter from the Hon. Tim Walberg, Chairman, H. Comm. on Educ. & Workforce, to Dr. Sally Kornbluth, President, Massachusetts Institute of Technology (December 11, 2025) (on file with Comm.).

[12] *E.g.*, Teleconference between Jenna Berger, Investigative Counsel, H. Comm. on Educ. & Workforce, and Jonathan J. Skladany, Partner, Jenner & Block (January 23, 2026 & January 26, 2026).

responsive documents to no avail.[13]

Even as the Committee repeatedly stated it was not seeking publicly available documents, MIT produced selections on February 13, 2026 from publicly available school policies and the IDHR Investigation Guide that did not shed light on the Committee's requests.

MIT has sought to excuse its failure to cooperate by pointing to ongoing litigation against the Institute on the DeGraff matter. However, the Committee is not seeking to adjudicate or participate in disputes between MIT and plaintiffs. Instead, the Committee is seeking to inform legislative efforts to protect Jewish students. The Committee has made clear that it will not share documentation received through the investigation directly with the litigants.[14] The Committee will not wait for litigation against MIT to conclude before receiving crucial information to evaluate potential legislation.[15] Your arguments that Committee oversight will disrupt litigation lack merit and are unsupported by any statutory basis or judicial opinion. Unfortunately, MIT's situation is not unique. Antisemitism at universities has led to significant litigation; failure to vigorously investigate this situation, among many others, would be a serious dereliction of the Committee's oversight duty.

The Committee is reiterating its request for the following non-public documents and communications. If MIT fails to provide these documents, the Committee will pursue the use of compulsory process.

- Documents and communications referring or relating IDHR's determination that there is not "sufficient basis to conclude that Prof. DeGraff's decision to use your social media/email exchanges as a case study was based on your Jewish identity so as to warrant an investigation into protected class discrimination."

- Documents and communications referring or relating to antisemitism and Prof. DeGraff in the possession of IDHR since October 7, 2023, including complaints, email communications about how to proceed, communications with complainants, and any investigative material.

- Documents sufficient to show whether Prof. DeGraff has faced disciplinary action from MIT related to antisemitism since October 7, 2023, and if so, how.

- Documents and communications in the possession of MIT, including the offices of the President, Chancellor, Vice Chancellor for Student Life, Dean of Student Life, Director of IDHR, Provost, Vice Provost for Faculty, and Human Resources, referring or relating to

---

[13] Email from Jenna Berger, Investigative Counsel, H. Comm. on Educ. & Workforce, to Jonathan J. Skladany, Partner, Jenner & Block (Jan 26, 2026, 05:41 PM EST) (on file with the Comm.).

[14] Teleconference between Jenna Berger, Investigative Counsel, H. Comm. on Educ. & Workforce, and Jonathan J. Skladany, Partner, Jenner & Block (January 23, 2026).

[15] *See Hutcheson v. United States,* 369 U.S. 599, 613 (1962) ("'It may be conceded that Congress is without authority to compel disclosures for the purpose of aiding the prosecution of pending suits; but the authority of that body, directly or through its committees, to require pertinent disclosures in aid of its own constitutional power is not abridged because the information sought to be elicited may also be of use in such suits.' ...The pertinency of the observation in *Sinclair* is not lessened by the circumstance that in this instance the state proceeding involved was criminal, rather than civil." (quoting *Sinclair v. United States*, 279 U.S. 263, 295 (1929)).

Prof. DeGraff's emails or tweets (posts on X.com) to or about a Jewish student in November 2024.

Congress's oversight powers are derived from the U.S. Constitution and have been repeatedly affirmed by the United States Supreme Court. Under House Rule X, the Committee's legislative and oversight jurisdiction is broad, extending to "education . . . generally" and "laws, programs, and Government activities relating to domestic educational programs and institutions and programs of student assistance within the jurisdiction of other committees."[16] This includes enforcement of Title VI and other antidiscrimination laws by the Department of Education.

Should you have any questions please contact Jenna Berger at jenna.berger@mail.house.gov or at 202.225.4527.

Sincerely,

Tim Walberg
Chairman
House Education and Workforce Committee

---

[16] RULES OF THE HOUSE OF REPRESENTATIVES, 119th Cong. (2025), at 7, 10, https://rules.house.gov/sites/evo-subsites/rules.house.gov/files/documents/houserules119thupdated.pdf.