**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| MICHEL DEGRAFF,<br><br>             *Plaintiff*,<br><br>   v.<br><br>MASSACHUSETTS INSTITUTE OF<br>TECHNOLOGY, *et al.,*<br><br>             *Defendants*. | Case No. 1:26-cv-11488-ADB<br><br>**Leave to File Granted on**<br>**July 8, 2026** |

## CONGRESSIONAL DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

MATTHEW B. BERRY
   *General Counsel*
TODD B. TATELMAN
   *Deputy General Counsel*
ANDY T. WANG
   *Associate General Counsel*
ALICIA GARTEN
   *Assistant General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
matthew.berry@mail.house.gov

*Counsel for Congressional Defendants*

July 24, 2026

**TABLE OF CONTENTS**

TABLE OF CONTENTS......................................................................................................................i

TABLE OF AUTHORITIES ...........................................................................................................ii

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.      The Court Lacks Subject Matter Jurisdiction Over Count I ............................................... 2

      A.      The Speech or Debate Clause Bars Count I............................................................ 2

      B.      Plaintiff Has Not Established Standing.................................................................... 7

      C.      Congressional Defendants Are Necessary Parties Under Rule 19, and Count I Must Be Dismissed ................................................................................. 11

II.     Count I Fails To State a Claim Upon Which Relief Can Be Granted.............................. 13

      A.      Plaintiff Does Not Plausibly Allege Coercion ...................................................... 13

      B.      MIT Is Not a State Actor ..................................................................................... 14

CONCLUSION............................................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Alexis v. McDonald's Rest. of Mass., Inc.*,
   67 F.3d 341 (1st Cir. 1995)..................................................................................................15

*Ass'n of Am. Physicians & Surgeons v. Schiff*,
   518 F. Supp. 3d 505 (D.D.C. 2021), *aff'd*,
   23 F.4th 1028 (D.C. Cir. 2022)..............................................................................................2

*Bragg v. Jordan*,
   669 F. Supp. 3d 257 (S.D.N.Y. 2023), *appeal dismissed sub nom.*
   *Bragg v. Pomerantz*, No. 23-615, 2023 WL 4612976 (2d Cir. Apr. 24, 2023).........................4

*Budowich v. Pelosi*,
   610 F. Supp. 3d 1 (D.D.C. 2022)..........................................................................................14

*Caldwell v. Cambra*,
   802 F. Supp. 3d 8 (D. Mass. 2025)..........................................................................................4

*Dantzler Inc. v. Empresas Berríos Inventory & Operations, Inc.*,
   958 F.3d 38 (1st Cir. 2020)..................................................................................................10

*Doe v. McMillan*,
   412 U.S. 306 (1973)..............................................................................................................2

*Downing v. Globe Direct LLC*,
   806 F. Supp. 2d 461 (D. Mass. 2011), *aff'd*,
   682 F.3d 18 (1st Cir. 2012)..............................................................................................12, 13

*Duggan v. Martorello*,
   596 F. Supp. 3d 195 (D. Mass. 2022)....................................................................................11

*Dunbar v. Weinberger*,
   412 F. Supp. 454 (D. Mass. 1974)..........................................................................................7

*Eastland v. U.S. Servicemen's Fund*,
   421 U.S. 491 (1975).......................................................................................................2, 4, 5

*Ericson v. Conagra Foods, Inc.*,
   No. 20-cv-11022, 2020 WL 6912105 (D. Mass. Nov. 24, 2020)...........................................11

*Fakhreddine v. Univ. of Pennsylvania*,
No. 24-cv-1034, 2025 WL 345089 (E.D. Pa. Jan. 30, 2025)......................................................14

*Fluent v. Salamanca Indian Lease Auth.*,
928 F.2d 542 (2d Cir. 1991)........................................................................................................12

*Gravel v. United States*,
408 U.S. 606 (1972)......................................................................................................................5

*Hentoff v. Ichord*,
318 F. Supp. 1175 (D.D.C. 1970)...............................................................................................5, 6

*Hutchison v. Proxmire*,
443 U.S. 111 (1979)....................................................................................................................3, 5

*Khalil v. Trs. Of Columbia Univ. in N.Y.C.*,
No. 25-cv-2079, 2025 WL 1019425 (S.D.N.Y. Apr. 4, 2025) ....................................................6

*Khalil v. Trs. of Columbia Univ. in N.Y.C.*,
No. 25-cv-2079, 2026 WL 775813 (S.D.N.Y. March 19, 2026)............................2, 3, 4, 6, 12

*Liberty Mut. Ins. Co. v. Aftermath Servs. LLC*,
No. 22-cv-11052, 2023 WL 5435878 (D. Mass. Aug. 23, 2023) ..............................................14

*Maine Med. Ctr. v. United States*,
675 F.3d 110 (1st Cir. 2012).......................................................................................................10

*Martin v. Evans*,
241 F. Supp. 3d 276 (D. Mass. 2017) ......................................................................................7, 8

*McGrain v. Daugherty*,
273 U.S. 135 (1927)......................................................................................................................4

*Meese v. Keene*,
481 U.S. 465 (1987)......................................................................................................................8

*Petitti v. New England Tel. & Tel. Co.*,
No. 89-3951, 1992 WL 359643 (D. Mass. Nov. 16, 1992) .........................................................7

*Preterm, Inc. v. Dukakis*,
591 F.2d 121 (1st Cir. 1979).........................................................................................................7

*Pujol v. Shearson Am. Exp., Inc.*,
　877 F.2d 132 (1st Cir. 1989)..................................................................................12

*Rangel v. Boehner*,
　785 F.3d 19 (D.C. Cir. 2015) ..................................................................................5

*Tampa Bay Students for a Democratic Soc'y v. Rhea Law*,
　No. 25-cv-02752, 2026 WL 979964 (M.D. Fla. Apr. 10, 2026)................................8

*TargetSmart Holdings, LLC v. GHP Advisors, LLC*,
　366 F. Supp. 3d 195 (D. Mass. 2019) ...................................................................11

*Watkins v. United States*,
　354 U.S. 178 (1957)................................................................................................2

*Wichita & Affiliated Tribes of Okla. v. Hodel*,
　788 F.2d 765 (D.C. Cir. 1986) ..............................................................................13

*Willitts v. Life Ins. Co. of N. Am.*,
　No. 18-cv-11908, 2021 WL 735784 (D. Mass. Feb. 25, 2021)...........................4, 9

## Other Authorities

Todd Garvey, Cong. Rsch. Serv., R45043,
　*Understanding the Speech or Debate Clause* (2017) ................................................7

**INTRODUCTION**

Speech or Debate Clause jurisprudence makes clear that when Congress performs a legislative act, such as investigating in furtherance of legislating, absolute immunity applies. Here, Congressional Defendants used their constitutional authority to investigate MIT as part of a larger investigation into the rise of antisemitism in higher education to determine whether legislative reforms are needed.  Congressional Defendants are concerned about the welfare of Jewish students at MIT, like Will Sussman, the Jewish PhD student who dropped out of school after being repeatedly targeted online by Plaintiff.  Plaintiff's belief that "MIT is Not an Antisemitic Environment," ECF No. 1 at 44, is simply irrelevant; the law forbids Plaintiff's attempt to substitute his views for those of the Congressional Defendants.  And when confronted with the clear precedent setting forth the broad scope of Speech or Debate Clause immunity, Plaintiff ignores or mischaracterizes relevant case law, cites irrelevant cases, and shifts his theory of the case.

Plaintiff also fails to contend with the crux of Congressional Defendants' standing arguments: there is no allegation in the Complaint, plausible or not, that the Congressional Defendants coerced MIT to take any adverse action against him.  Indeed, Plaintiff's own chronology of events demonstrates otherwise: MIT acted against DeGraff before Congressional Defendants sent any letter to MIT or identified Plaintiff in any way, and the only letter that substantively discusses DeGraff post-dates his alleged injuries.

Finally, even if this Court were to somehow reach the merits of Plaintiff's claims, Count I still must be dismissed.  Congressional Defendants have not violated the First Amendment through their investigatory actions.  All parties (even Plaintiff in his Complaint) agree that MIT voluntarily provided information to the Committee.  That belies any allegation of coercion.  And

MIT is not a state actor just because it voluntarily provided information to the government.

For these reasons as set forth in more detail below, Count I must be dismissed.

## ARGUMENT

**I.      The Court Lacks Subject Matter Jurisdiction Over Count I**

Plaintiff has failed to carry his burden of establishing subject matter jurisdiction.

**A.      The Speech or Debate Clause Bars Count I**

Plaintiff argues that the Speech or Debate Clause protects only "internal legislative activity" and it "does not immunize public dissemination through a media outlet such as the *Daily Wire* or the outward-facing, extra-Congressional actions alleged in Complaint."  ECF No. 47 at 16 (emphasis removed).  Plaintiff is wrong in several critical respects and displays a fundamental misunderstanding of not just the Clause but also his own suit.

*First*, as Congressional Defendants explained in their Motion to Dismiss, sending information-gathering letters and issuing legislative reports are legislative acts absolutely protected by the Speech or Debate Clause.  *See* ECF No. 37 at 7-12.  Far from being extra-Congressional, the "power of the Congress to conduct investigations is inherent in the legislative process."  *Watkins v. United States*, 354 U.S. 178, 187 (1957).  Thus, "information gathering letters constitute protected legislative acts."  *Ass'n of Am. Physicians & Surgeons v. Schiff*, 518 F. Supp. 3d 505, 518 (D.D.C. 2021), *aff'd*, 23 F.4th 1028 (D.C. Cir. 2022).  Likewise, the Clause "includes within its protections anything generally done in a session of the House," such as issuing legislative reports.  *Doe v. McMillan*, 412 U.S. 306, 311 (1973) (internal quotation marks omitted).  Plaintiff fails to address or rebut the relevant precedents on these points.  Indeed, Plaintiff does not even mention, much less discuss, *Doe*, *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491 (1975), and *Ass'n of Am. Physicians & Surgeons*.  Plaintiff also ignores the Speech or Debate Clause holding in *Khalil v. Trs. of Columbia Univ. in N.Y.C.*, No. 25-cv-2079, 2026

WL 775813, at \*3-\*4 (S.D.N.Y. March 19, 2026), where the court rejected the same arguments Plaintiff now advances in this case, concluding that because the Committee's sending of an information-seeking letter to Columbia was part of the Committee's "power to investigate," the Committee was "immune from suit."

Plaintiff instead argues that social media posts, press releases, and a *Daily Wire* article are outside the protections of the Clause (supported by his citation to *Hutchison v. Proxmire*, 443 U.S. 111 (1979)) because they are "outward-facing." *See* ECF No. 47 at 15-19. But Congressional Defendants never argued these were protected by the Clause because this is not Plaintiff's theory of his case. Plaintiff's reply is therefore a red herring. Plaintiff is suing to stop the Committee's investigation and other protected legislative acts, such as its information-gathering letters and publication of legislative reports. Count I to the Complaint is titled, "*The Committee's demand that MIT relinquish Plaintiff's records* violates the First Amendment." ECF No. 1 at 55 (emphasis added). Likewise, Count I states how "Plaintiff seeks declaratory and prospective injunctive relief against the Committee … to halt … the Committee's continuing demands for records." *Id*. ¶ 172. And the Complaint's Prayer for Relief asks the Court to enjoin the Committee from "[d]emanding, requesting or otherwise seeking (including through informal or 'voluntary' requests) the disclosure by MIT" of information, and "[p]ublishing, distributing or otherwise disseminating any confidential information referring or relating to Plaintiff." *Id*. at 65. Thus, Plaintiff's case is not about social media posts, press releases, or op-ed publications. Instead, per the plain text of the Complaint, his suit seeks to stop the Committee's investigation.[1]

---

[1] If Plaintiff is in fact suing Congressional Defendants over the *Daily Wire* article, this is not clearly alleged in the Complaint. As explained above, the Complaint concerns the Committee's investigation. And, as explained below, while the Complaint does mention the article, it is used only as evidence of the alleged motive behind the Committee's investigation

While the Complaint cites the *Daily Wire* article as evidence of the Committee's motive for its investigation, claiming that it reveals "[t]he harmful intent of the Committee's campaign and the true nature of its investigation," ECF No. 1 ¶ 4, what Plaintiff believes to be the Committee's motive is irrelevant to the judicial inquiry. *See Eastland*, 421 U.S. at 508 ("[I]n determining the legitimacy of a congressional act [courts] do not look to the motives alleged to have prompted it."). When Congress investigates in "times of political passion, dishonest or vindictive motives are readily attributed to legislative conduct and [just] as readily believed. [But] [t]he wisdom of congressional approach or methodology is not open to judicial veto." *Id.* at 509 (citation omitted). As a result, it is for neither the Plaintiff nor the Court to determine what is or is not a "legitimate" legislative act. *See* ECF No. 37 at 12-15. The Supreme Court has long been clear that if a legislative action can be construed as legitimate, it must be so construed, and courts have "no right to assume" otherwise. *McGrain v. Daugherty*, 273 U.S. 135, 178 (1927). Here, the Committee is engaged in a legitimate investigation into the rise of antisemitism on college campuses, as one federal court has already determined. *See Khalil*, 2026 WL 775813, at *4. Thus, "[t]he Court is required to presume that a congressional committee's stated legislative object is 'the real object.'" *Bragg v. Jordan*, 669 F. Supp. 3d 257, 269 (S.D.N.Y. 2023) *appeal dismissed sub nom. Bragg v. Pomerantz*, No. 23-615, 2023 WL 4612976 (2d Cir. Apr. 24, 2023).

---

and not as the substantive basis for any counts in the Complaint. Because "in his opposition to Defendants' motions to dismiss, he advances a theory entirely absent from his … complaint," it should be disregarded. *Willitts v. Life Ins. Co. of N. Am.*, No. 18-cv-11908, 2021 WL 735784, at *4 (D. Mass. Feb. 25, 2021) (Burroughs, J.); *see also Caldwell v. Cambra*, 802 F. Supp. 3d 8, 41 n.10 (D. Mass. 2025) ("a plaintiff cannot amend his complaint by adding new allegations or theories in an opposition to a motion to dismiss."). To the extent the Court accepts Plaintiff's new theory, Congressional Defendants respectfully request leave to file a short supplemental brief that would squarely address the *Daily Wire* article and raise meritorious arguments in favor of dismissal.

4

Indeed, although the Committee's investigation is *neither* false nor derogatory, the Clause would protect even those acts. *Eastland*, 421 U.S. at 510 (explaining that the Clause protects legislative acts that are "unconstitutional or otherwise contrary to criminal or civil statutes." (citation omitted)); *see also Hutchinson*, 443 U.S. at 130 ("A [defamatory] speech by [Senator] Proxmire in the Senate would be wholly immune."). As the D.C. Circuit put it:

> [Plaintiff] contends that the defendants' conduct cannot be "legislative" because it was, in his view, illegal. This "familiar" argument—made in almost every Speech or Debate Clause case—has been rejected time and again. An act does not lose its legislative character simply because a plaintiff alleges that it violated the House Rules, or even the Constitution. Such is the nature of absolute immunity, which is—in a word—absolute.

*Rangel v. Boehner*, 785 F.3d 19, 24 (D.C. Cir. 2015) (citations omitted). That is why "[i]nstead of looking into the defendants' 'motive or intent,' the standard for determining whether an act is legislative 'turns on the nature of the act' itself." *Id*. (citation omitted). Here, stripping all of Plaintiff's adjectives from the acts in question, a congressional investigation, letters seeking information in support of that investigation, and the publication of legislative reports are quintessential legislative acts that are absolutely immune under the Speech or Debate Clause.

*Second*, Plaintiff grossly mischaracterizes both *Hentoff v. Ichord*, 318 F. Supp. 1175 (D.D.C. 1970) and *Gravel v. United States*, 408 U.S. 606 (1972) by attempting to shoehorn these cases into supporting his proposition that the "Speech or Debate Clause does not immunize public dissemination through a media outlet" or other "outward-facing" actions. ECF No. 47 at 16. In *Gravel*, the Supreme Court dismissed the Senator and his aide because of the immunity afforded by the Clause, but that protection did not extend to the private publisher that Senator Gravel enlisted to publish the Pentagon Papers. *See* 408 U.S. at 621-27. Likewise, in *Hentoff*, Plaintiff sued both Congressional Committee Members and the printer that would print the Committee report at issue. 318 F. Supp. at 1176. The Court in *Hentoff* applied the Clause and

5

dismissed the Members, holding not only that "legislative activities are not limited to speech or debate on the floor of Congress" but also that "the Court will take no action which limits the use that individual Congressmen choose to make of the Report or its contents on or off the floor of Congress.  No injunction is appropriate against any Congressman named defendant."  *Id*. at 1179.  Like *Gravel*, *Hentoff* did not extend the Clause's protections to the printer and therefore enjoined it.  *Id*. at 1179-81.

Gravel* and *Hentoff* did not hold that "outward-facing" actions were unprotected, that courts may enjoin the publication of a Congressional report, or that the Clause's protections in civil actions are not absolute; rather, both cases stand for the unremarkable proposition that only legislators, their aides, and other Legislative Branch entities are protected by the Clause.  In fact, Plaintiff entirely misstates *Hentoff*'s holding when he asserts that the court "granted an injunction against the House Committee" because the injunction was applied against only the printer.  ECF No. 47 at 15.  Here, contrary to *Hentoff* and *Gravel*, Plaintiff has not sued some outside entity that facilitated the dissemination of a congressional report, but the Congressional Defendants themselves.  Thus, because "[P]laintiff[] seek[s] relief *against the Congressional defendants* … and the Clause acts as a jurisdictional bar against such requests," Count I must be dismissed.  *Khalil v. Trs. Of Columbia Univ. in N.Y.C.*, No. 25-cv-2079, 2025 WL 1019425, at *1 (S.D.N.Y. Apr. 4, 2025) (emphasis added).[2]

---

[2] Plaintiff notes that *Hentoff* found the Congressional report at issue in that case lacking in legislative purpose.  *See* ECF No. 47 at 15-17.  But this does not help Plaintiff.  As already explained, the committee there was dismissed from the case.  Moreover, *Hentoff* predates several seminal Supreme Court Speech or Debate Clause opinions, such as *Doe* (1973) and *Eastland* (1975), that established how courts must defer to Congress's stated legislative purposes, *see supra* pp. 4-5, and so this aspect of *Hentoff* has been abrogated.  Finally, as is the case for the Committee's investigation of Columbia, its investigation of MIT has a legislative purpose.  *See Khalil*, 2026 WL 775813, at *4.  After all, the Committee's investigations of both schools are part of its larger investigation into antisemitism on college campuses.

*Finally*, Plaintiff is wrong when he says the Clause does not "bar use of Congressional statements as evidence of context or intent," and that "Courts routinely consider legislative records for that limited purpose." ECF No. 47 at 17. While, as discussed above, context and intent are irrelevant, the Speech or Debate Clause also prohibits their use absolutely. "The Clause's general immunity principle is perhaps best understood as complemented—and effectuated—by two component privileges that courts have viewed as emanating from the Clause. The evidentiary component of the Clause prohibits evidence of legislative acts from being introduced for use against a Member." Todd Garvey, Cong. Rsch. Serv., R45043, *Understanding the Speech or Debate Clause* 4 (2017). Plaintiff's citations to *Preterm, Inc. v. Dukakis*, 591 F.2d 121 (1st Cir. 1979), *Dunbar v. Weinberger*, 412 F. Supp. 454 (D. Mass. 1974), and *Petitti v. New England Tel. & Tel. Co.*, No. 89-3951, 1992 WL 359643 (D. Mass. Nov. 16, 1992) are completely inapposite. ECF No. 47 at 17. Each of these cases involved questions of statutory interpretation where the respective court was attempting to divine congressional intent when applying a statute to the facts of the case. None involved a suit against a congressional entity where the plaintiff sought to use evidence of legislative acts against a congressional entity.

### B.    Plaintiff Has Not Established Standing

Plaintiff's Opposition does not sufficiently rebut Congressional Defendants' arguments about injury, causation, or redressability. Without those core elements, Plaintiff cannot establish Article III standing.

*First*, Plaintiff fails to allege his injuries with the specificity required by the case law. For his First Amendment claim, Plaintiff does not address the requirement to allege "an intention to engage in a particular course of conduct," *Martin v. Evans*, 241 F. Supp. 3d 276, 282 (D.

Mass. 2017), or "a definite plan to engage in specific expressive activity," *Tampa Bay Students for a Democratic Soc'y v. Rhea Law*, No. 25-cv-02752, 2026 WL 979964, at \*9 (M.D. Fla. Apr. 10, 2026) from which he is allegedly chilled from engaging.  DeGraff's public statements and actions continue to show he was (and is) not chilled in any way, shape, or form.  For his claims of reputational damage, Plaintiff also fails to specifically identify the "continued reputational damage resulting from the Committee's public and false accusations."  ECF No. 47 at 6. Plaintiff relies on *Meese* to support his allegations, but that case does not help Plaintiff.  In *Meese*, the plaintiff alleged specifically that exhibiting films labeled as political propaganda by the government would harm his ability to obtain re-election as a California state senator and to practice his profession as an attorney.  *Meese v. Keene*, 481 U.S. 465, 473 (1987).  DeGraff has not alleged that he has suffered reputational harm preventing him from practicing his profession—he is still employed as a professor at MIT—or his ability to get hired elsewhere.  In fact, the court in *Meese* noted that "if Keene had merely alleged that the appellation deterred him by exercising a chilling effect on the exercise of his First Amendment rights, he would not have standing to seek its invalidation."  *Id.*

*Second*, nothing in Plaintiff's Opposition clarifies how his alleged injuries—caused by MIT—are linked to the Congressional Defendants.  While Plaintiff's alleged injuries are at times amorphous, the list of injuries he identifies in his Opposition cannot be fairly traced to the Committee.  ECF No. 47 at 5-6.  The first three injuries—academic suppression, professional penalties, and institutional censorship—flow from MIT actions that Plaintiff fails to plausibly link to any Committee action, chronologically or otherwise.  It is even less plausible that the Committee can be linked to any alleged safety harms; it is clear those allegations stemmed from incidents with third parties not before the court.  And the alleged "reputational harm" was not

8

pled with the required specificity to be traceable to Committee action.

Perhaps the best indication of Plaintiff's failure to establish causation is how he fails to rebut the chronological problems raised in Congressional Defendants' Motion to Dismiss. *See* ECF No. 37 at 17. While Plaintiff boldly declares in his Opposition to MIT's Motion to Dismiss that "each of MIT's restrictive actions … followed explicit Congressional naming of Prof. DeGraff, public smearing by Congressional Defendants, and Title VI-related threats of funding cuts," ECF No. 46 at 24, this is just wrong. The March 17, 2026 Letter and Staff Report, the only documents that substantively discuss Plaintiff, *post-date all his alleged injuries*. *See* ECF No. 37 at 17. Likewise, the Complaint alleges that MIT took its first action against Plaintiff in early December 2023 by subjecting his course proposal to heightened review and then rejecting it. *See* ECF No. 1 ¶¶ 76-77. This is also confirmed by Plaintiff's Opposition to MIT's Motion to Dismiss. *See* ECF No. 46 at 1-3.

Plaintiff entirely ignores the former chronological issue, and his only response to the latter problem is an attempt to tie the rejection of his course proposal to the start of Congressional hearings in December 2023, before a single Committee letter was sent. *See* ECF No. 47 at 12. But this argument stretches Plaintiff's credibility even farther than the others. The Complaint does not (and cannot) allege that DeGraff was even mentioned during the hearings, much less that the specific issue of Plaintiff's course proposal was discussed. In fact, the most that Plaintiff can say is that MIT President Sally Kornbluth was present at a hearing, but even this allegation was first raised only in Plaintiff's Opposition; it is not in his Complaint. *See id*. While "an opposition to a motion to dismiss is not the place for new factual allegations," *Willitts*, 2021 WL 735784, at *4, even if this Court considers the fact that President Kornbluth was a witness at a Committee hearing in December 2023, Plaintiff still fails to explain how MIT could

9

have taken action against DeGraff based on the Committee's alleged pressure when the

Committee had yet to identify DeGraff whatsoever, much less mention his proposed course.

Regardless, the letters themselves are pure records requests that do not act upon Plaintiff

in any way, nor can they be interpreted as asking (or forcing) MIT to take any action against

Plaintiff.  For example, contrary to Plaintiff's allegation that the first letter from the Committee,

sent on March 8, 2024, "identif[ied] him as a target," ECF No. 47 at 3, that letter mentions

DeGraff only briefly in one bullet point, quoting from DeGraff's own publicly available posts

and writing.  ECF No. 37-1, Ex. A at 6.  The Committee did not request any documents specific

to Plaintiff, instead focusing broadly on categories of documents pertaining to antisemitic acts.

And, as discussed previously, the second letter, sent on December 11, 2025, wholly fails to

substantively mention DeGraff, while the last letter, sent on March 17, 2026, post-dates

DeGraff's alleged injuries.  Simply put, Plaintiff's alleged injuries cannot be traced to

Congressional Defendants.

*Third*, the harms alleged cannot be redressed by a judgment against the Committee.

Plaintiff fails to wrestle with the fact that the Speech or Debate Clause means that there can be

no redressability, because Congressional Defendants are immune from suit.  As a result, Plaintiff

cannot show that the requested relief "will at least lessen [his] injury."  *Dantzler Inc. v.*

*Empresas Berríos Inventory & Operations, Inc.*, 958 F.3d 38, 49 (1st Cir. 2020).

Finally, Plaintiff suggests jurisdictional discovery to assist him in establishing standing.

ECF No. 47 at 14.  But jurisdictional discovery will not aid Plaintiff and is unnecessary here.

Plaintiff has "the obligation to present facts to the court which show why jurisdiction would be

found if discovery were permitted."  *Maine Med. Ctr. v. United States*, 675 F.3d 110, 119 (1st

Cir. 2012) (citation omitted).  He has not done so.  And "[c]ourts in this district have routinely

denied jurisdictional discovery requests where plaintiffs fail to allege facts demonstrating that jurisdiction would be found if discovery were permitted or where plaintiffs have failed to identify with specificity what information they seek." *Ericson v. Conagra Foods, Inc.*, No. 20-cv-11022, 2020 WL 6912105, at *8 (D. Mass. Nov. 24, 2020); *see also TargetSmart Holdings, LLC v. GHP Advisors, LLC*, 366 F. Supp. 3d 195, 215 (D. Mass. 2019) (denying jurisdictional discovery where plaintiff gave "no clear indication of what it expects, or even hopes, to uncover through this process that would shed further light on the claims in its complaint"). Plaintiff fails to identify what information he seeks that would establish standing, only "discovery pertaining to subject matter jurisdiction." ECF No. 47 at 14. That will not suffice.

### C. Congressional Defendants Are Necessary Parties Under Rule 19, and Count I Must Be Dismissed

Plaintiff's Opposition fails to rebut the Rule 19(b) factors, which weigh decisively against proceeding without the Congressional Defendants. *See* ECF No. 47 at 22-23.

Plaintiff claims that Congressional Defendants are not necessary parties to his claim against MIT but completely fails to address Congressional Defendants' Rule 19(a) arguments about the Committee's interests in the action. *Id*. Plaintiff's arguments about the relief that could be shaped against MIT absent the Congressional Defendants, *id*. at 23, only address Rule 19(a)(1)(A), one path for an absent party to be a required party. But then this Court must turn to the other path set forth in Rule 19(a)(1)(B), *see Duggan v. Martorello*, 596 F. Supp. 3d 195, 203-04 (D. Mass. 2022), the standard upon which the Congressional Defendants are relying here, *see* ECF No. 37 at 19, and which Plaintiff does not discuss.

Moving to Rule 19(b), joinder is not feasible here because Congressional Defendants are absolutely immune under the Speech or Debate Clause. *See supra* Section I.A. And Plaintiff completely fails to rebut this Circuit's precedents holding that when a required party is immune

11

from suit, "there is very little room" to consider other factors under the Rule 19(b) test for joinder. *Downing v. Globe Direct LLC*, 806 F. Supp. 2d 461, 470 (D. Mass. 2011) (quotation marks and citation omitted), *aff'd*, 682 F.3d 18 (1st Cir. 2012). Instead, Plaintiff confusingly asserts that "Rule 19 … is not derivative immunity," ECF No. 47 at 23, but Congressional Defendants are not trying to assert any kind of "derivative immunity" under Rule 19. Rather, Congressional Defendants are asserting their absolute immunity under the Speech or Debate Clause, which means they cannot be joined under Rule 19. And Plaintiff fails to rebut the case law demonstrating courts regularly dismiss cases under Rule 19 when a necessary party is immune from suit.

While Plaintiff points to two cases, *Khalil* and *Pujol*, neither case is persuasive. As to *Khalil*, Congressional Defendants respectfully disagree with that court's cursory analysis of Rule 19, which simply failed to address the relevant Second Circuit test for whether a case can proceed when joinder of an immune party is not feasible. *Compare Khalil*, 2026 WL 775813, at \*9, *with Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542, 548 (2d Cir. 1991). As to *Pujol,* it is inapposite first and foremost because it does not deal with an immunity claim from a required party. *Pujol v. Shearson Am. Exp., Inc.*, 877 F.2d 132 (1st Cir. 1989). That case instead dealt with the question of whether a subsidiary of a corporation was a required party under Rule 19(a), not whether a required party that is immune from suit is indispensable under Rule 19(b). *Id.* at 135. Moreover, the court in *Pujol* found the subsidiary was not required to be joined under Rule 19(a) because, among other reasons, the subsidiary had "virtually identical" interests to the defendant corporation. *Id.* Here, Plaintiff has not alleged that Congressional Defendants and MIT have such identical interests, nor could he, as Congressional Defendants clearly have distinct interests from MIT. *Pujol* is thus inapplicable for this reason as well.

12

Even without the "heavy thumb on the scale for dismissal" immunity provides, *Downing*, 806 F. Supp. 2d at 470, the Rule 19(b) factors favor complete dismissal of Count I. Plaintiff does not address Congressional Defendants' arguments that a judgment rendered in Congressional Defendants' absence would prejudice the Committee, because it would prevent MIT from sharing information with the Committee. Plaintiff's assertion that "meaningful relief can be shaped against MIT without ordering Congress to do anything," ECF No. 47 at 23, does not address that concern or outweigh the other factors. And such relief would come at the cost of Congressional Defendants' "rights to participate in litigation that critically affect their interests." *Wichita & Affiliated Tribes of Okla. v. Hodel*, 788 F.2d 765, 777 (D.C. Cir. 1986).

## II.    Count I Fails To State a Claim Upon Which Relief Can Be Granted

Plaintiff fails to rebut Congressional Defendants' arguments explaining why the Complaint fails to state a claim upon which relief can be granted.

### A.    Plaintiff Does Not Plausibly Allege Coercion

Plaintiff argues that the Committee has "[d]emand[ed] speech-related records under Title VI authority and with mention of federal funding" and that "Congress targeted Prof. DeGraff's protected speech, invoked Title VI and federal-funding consequences." ECF No. 47 at 7, 10. But there is a reason why Plaintiff relies on vague assertions instead of specific quotations of the Committee's supposed coercion: such statements do not exist, and Plaintiff distorts reality by implying otherwise.

None of the Committee's letters "demanded" records, and only one mentions funding at all; the December 11, 2025 letter, which states: "As you know, postsecondary institutions that receive federal funds must maintain a safe learning environment and fulfill all obligations under Title VI." ECF No. 37-1, Ex. B at 2. But this is not a threat to take away MIT's funding, it is a factual statement of federal anti-discrimination and spending law. We have truly stepped

13

through the looking glass if the Committee can be found to have violated the First Amendment by generally maintaining that MIT should comply with federal civil rights law.

While Plaintiff urges this Court to view his case in "context with [the] massive cuts of federal funding at Harvard, Columbia, etc.," ECF No. 47 at 14, he again imports the actions of the non-party Executive Branch into this case. At bottom, the Congressional Defendants have taken no actions that would threaten MIT with a loss of funding, and, MIT, the supposed target of the coercion, does not even believe it has been coerced. *See* ECF No. 39 at 11-15. Indeed, as explained in the Motion to Dismiss, Plaintiff's own Complaint concedes that the Committee requested only voluntary compliance. *See* ECF No. 37 at 23; ECF No. 1 ¶ 139. Plaintiff's Opposition disregards this point, and his failure to address it is a waiver. *Liberty Mut. Ins. Co. v. Aftermath Servs. LLC*, No. 22-cv-11052, 2023 WL 5435878, at *4 (D. Mass. Aug. 23, 2023) (Burroughs, J.).

### B.    MIT Is Not a State Actor

Plaintiff ignores much of Congressional Defendants' state action argument and fails to address either *Fakhreddine v. Univ. of Pennsylvania*, No. 24-cv-1034, 2025 WL 345089 (E.D. Pa. Jan. 30, 2025) or *Budowich v. Pelosi*, 610 F. Supp. 3d 1 (D.D.C. 2022). Plaintiff has thus waived his opposition to these arguments. *See Liberty Mut. Ins. Co.*, 2023 WL 5435878, at *4. Plaintiff's only response is that in the context of MIT's alleged suppression of Plaintiff's course proposal and embargo of certain seminar videos, MIT "willful[ly] participat[ed]" with the Committee, "satisfying the state-action requirement." ECF No. 47 at 14. But Plaintiff alleges no facts whatsoever (and no such facts exist) that Committee was even aware of this alleged suppression and embargo, much less that the Committee orchestrated a "plan, prearrangement, conspiracy, custom, or policy" with MIT that resulted in "concerted action" against Plaintiff on

14

this specific issue.  *See Alexis v. McDonald's Rest. of Mass., Inc.*, 67 F.3d 341, 351-52 (1st Cir. 1995) (explaining the requirements for joint action).  As such, Plaintiff has failed to plead any possible claim against the Committee on this issue, much less a plausible one.

## CONCLUSION

For the foregoing reasons, Count I should be dismissed.

Respectfully submitted,

*/s/ Matthew B. Berry*
MATTHEW B. BERRY
   *General Counsel*
TODD B. TATELMAN
   *Deputy General Counsel*
ANDY T. WANG
   *Associate General Counsel*
ALICIA GARTEN
   *Assistant General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
matthew.berry@mail.house.gov

*Counsel for Congressional Defendants*

July 24, 2026

15

**CERTIFICATE OF SERVICE**

I certify that on July 24, 2026, I caused the foregoing document to be filed via this

Court's CM/ECF system, which I understand caused service on all registered parties.


/s/ *Matthew B. Berry*
Matthew B. Berry