**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

Michel DeGraff,

    *Plaintiff*,

v.

Massachusetts Institute of Technology;
Tim Walberg in his official capacity as
the Chairman of the House Committee
on Education & Workforce; and
The House Committee on Education
& Workforce,

    *Defendants*.

Case No. 1:26-cv-11488-ADB

**Motion for Leave to File Reply Brief
Granted on July 8, 2026**

<u>**REPLY BRIEF IN SUPPORT OF DEFENDANT
MASSACHUSETTS INSTITUTE OF TECHNOLOGY'S
MOTION TO DISMISS COUNT I OF THE COMPLAINT**</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

ARGUMENT ........................................................................................................................... 1

I.     The Opposition Confirms That MIT Is Not a State Actor. ................................................. 1

     A.     The Complaint Does Not Plausibly Allege State Action. ...................................... 1

     B.     DeGraff's Attempt to Reframe His First Amendment Claim Fails. ...................... 3

     C.     DeGraff Lacks Standing. ..................................................................................... 8

     D.     DeGraff Fails to State a Claim Under *Vullo*. ........................................................ 11

     E.     If the Court Deems the Congressional Defendants Immune From Suit, Rule 19 Requires That Count I Be Dismissed Against MIT As Well. ................................................................................................................... 13

II.     Leave to Amend Should Be Denied .................................................................................. 15

CONCLUSION ........................................................................................................................ 15

## TABLE OF AUTHORITIES

CASES

*Air Sunshine, Inc. v. Carl*, 663 F.3d 27 (1st Cir. 2011) ....................................................................8

*Backpage.com v. Dart*, 807 F.3d 229 (7th Cir. 2015)......................................................................10

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963)............................................................10, 11, 12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .....................................................................8

*Benavidez v. Gunnell*, 722 F.2d 615 (10th Cir. 1983) ....................................................................3

*Blum v. Yaretsky*, 457 U.S. 991 (1982)...........................................................................1, 4, 6, 7, 14

*Bruni v. City of Pittsburgh*, 824 F.3d 353 (3d Cir. 2016) ...............................................................3

*Caldwell v. Cambra*, 802 F. Supp. 3d 8 (D. Mass. 2025).................................................................4

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ..........................................................................10

*Cornelio v. Connecticut*, 32 F.4th 160 (2d Cir. 2022) ....................................................................3

*Doe v. University of Sciences*, 961 F.3d 203 (3d Cir. 2020)............................................................2

*FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024)..................................................10

*Fakhreddine v. University of Pennsylvania*, No. 24-cv-1034, 2025 WL 345089
    (E.D. Pa. Jan. 30, 2025), *aff'd as modified*, No. 25-1290, 2026 WL 74593 (3d
    Cir. Jan. 9, 2026)........................................................................................................................2, 10

*Frith v. Whole Foods Market, Inc.*, 38 F.4th 263 (1st Cir. 2022)............................................... 7-8

*Gray v. Evercore Restructuring L.L.C.*, 544 F.3d 320 (1st Cir. 2008) .........................................15

*Hatch v. Department for Children, Youth & Their Families*, 274 F.3d 12 (1st Cir.
    2001) ..............................................................................................................................................15

*Hochendoner v. Genzyme Corp.*, 823 F.3d 724 (1st Cir. 2016) ..........................................9, 11, 15

*Khalil v. Trustees of Columbia University in the City of New York*, No. 25-cv-2079,
    2026 WL 775813 (S.D.N.Y. Mar. 19, 2026) ...................................................4, 5, 6, 7, 11, 13

*Laird v. Tatum*, 408 U.S. 1 (1972)...................................................................................................10

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982)......................................................................6, 8

*Manhattan Community Access Corp. v. Halleck*, 587 U.S. 802 (2019) ..................................2, 6, 8

*Mead v. Independence Association*, 684 F.3d 226 (1st Cir. 2012) ....................................................3

*National Rifle Association of America v. Vullo*, 602 U.S. 175 (2024) ....................................11, 12

*Peterson v. City of Greenville*, 373 U.S. 244 (1963) ........................................................................2

*Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008) ............................................................14

*Republican National Committee v. Pelosi*, No. 22-5123, 2022 WL 4349778 (D.C. Cir. Sept. 16, 2022) ........................................................................................................15

*Republican National Committee v. Pelosi*, 602 F. Supp. 3d 1 (D.D.C. 2022), *vacated as moot*, No. 22-5123, 2022 WL 4349778 (D.C. Cir. Sept. 16, 2022)......................15

*RNR Enterprises, Inc. v. SEC*, 122 F.3d 93 (2d Cir. 1997).............................................................12

*Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49 (1st Cir. 2013)..............................................3

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ..................................................................................9

*Sullivan v. Carrick*, 888 F.2d 1 (1st Cir. 1989)...............................................................................9

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)..............................................................10

*Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826 (9th Cir. 1999) ...........................13

*Trump v. Mazars USA, LLP*, 591 U.S. 848 (2020) .........................................................................12

*United States v. AT&T Co.*, 567 F.2d 121 (D.C. Cir. 1977) ...........................................................15

*United States v. Price*, 383 U.S. 787 (1966)...........................................................................3, 5, 6

**LEGISLATIVE MATERIALS**

*Holding Campus Leaders Accountable and Confronting Antisemitism: Hearing Before the H. Comm. on Educ. & the Workforce*, 118th Cong. (2023) ....................................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 19(a)(1)(B) .............................................................................................................14

Fed. R. Civ. P. 19(a)(1)(B)(i)..........................................................................................................14

DeGraff's opposition brief confirms his Complaint does not state a First Amendment claim against MIT. Unable to defend the state-action theory alleged in the Complaint—that MIT, a private institution, became a state actor "by virtue of … having furnished … documents to the Committee," Compl. ¶190—DeGraff changes course. He now says that alleged personnel actions reflect MIT's "anticipatory complian[ce]" with the Committee's unstated wishes. Opp. 7. That is not the theory of constitutional injury alleged in the Complaint, and it fails regardless. There are no well-pleaded factual allegations creating a plausible inference that any such personnel actions resulted from an exercise of the Committee's "coercive power" such that they "must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).

The opposition's remaining arguments fare no better. DeGraff's standing theory fails for the same reasons—it improperly recasts state-law employment injuries as First Amendment harms allegedly traceable to implied Committee pressure. Nor does the opposition's cursory discussion of the actual theories of harm alleged in the Complaint explain how generalized claims of chill, speculative fears of future harassment by third parties, or the possible disclosure of unspecified records suffice to create standing here. On the merits, DeGraff does not allege the required threat of adverse government action against MIT or address how MIT, as the *victim* of the alleged coercion, can be the proper defendant under *Vullo*. And having insisted that MIT's actions were compelled by the Committee, he cannot avoid the conclusion that Rule 19 does not permit his claim to proceed against MIT in the Committee's absence. Count I should be dismissed with prejudice.

## ARGUMENT

### I.     The Opposition Confirms That MIT Is Not a State Actor.

#### A.     The Complaint Does Not Plausibly Allege State Action.

DeGraff's opposition brief states the correct standard: The Complaint must be dismissed if

it does not "plausibly allege facts supporting state action." Opp. 6. The Complaint does not meet this standard. Instead, it expressly and repeatedly acknowledges that the Committee has asked MIT to produce documents *voluntarily*, Compl. ¶¶139-140; *see id.*, Prayer for Relief ¶B(c), and the opposition does not claim otherwise. That acknowledgement is dispositive. As MIT has explained, MIT's voluntary disclosure of certain documents in response to the Committee's requests does not transform it into a state actor, because the Committee has neither "compel[led] [MIT] to take a[ny] particular action" nor "act[ed] jointly with [MIT]" to violate DeGraff's First Amendment rights. *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019); *see* MIT Br. 10-16. The opposition does not meaningfully engage with either argument.

**Compulsion.** The dispositive question for compulsion is whether the Committee's actions "removed th[e relevant] decision from the sphere of [MIT's] private choice," *Peterson v. City of Greenville*, 373 U.S. 244, 248 (1963), and the Complaint makes clear the answer is no. Compl. ¶¶139-40 (MIT "voluntar[ily]" "chose to comply" with requests it "could have refused."); *see* Ex. B at 8 (March 2024 Request asked MIT to "please produce"); Ex. C at 3 (same as to December 2024 Request); Ex. E at 4 (March 2026 Request was not "compulsory"); *accord* Committee Br. 25 ("MIT is under no obligation to respond" to the requests).[1] The opposition (at 11-12) has no answer to *Fakhreddine v. University of Pennsylvania*, which correctly found a failure to plausibly allege state action on materially similar facts. No. 24-cv-1034, 2025 WL 345089, at *5 (E.D. Pa. Jan. 30, 2025), *aff'd as modified*, 2026 WL 74593 (3d Cir. Jan. 9, 2026). Here, as in *Fakhreddine*, there was no compulsion. *Accord* MIT Br. 12.

---

[1] DeGraff cites *Doe v. University of Sciences*, 961 F.3d 203 (3d Cir. 2020), for the proposition that the Committee's use of the word "please" does not show that MIT can refuse the requests. Opp. 11. But *Doe* was not a state-action case and, in any event, involved government "threat[s] … to terminate all federal funding" for noncompliance. 961 F.3d at 213 & n.6.

2

Rather than defend the Complaint's compulsion theory, the opposition simply argues that compulsion is a "fact-bound" inquiry that cannot be resolved on the pleadings. Opp. 9-11, 19-22, 24-25. That the inquiry requires facts does not relieve DeGraff of his burden to *plead* those facts. It is not enough to simply assert that compulsion exists. *Mead v. Indep. Ass'n*, 684 F.3d 226, 232 (1st Cir. 2012) (affirming dismissal for failure to plausibly allege compulsion). DeGraff's suggestion that his claim should be subject to more lenient review, Opp. 24-25, is not supported by his cited authorities, which do not actually articulate a more deferential pleading standard and do not involve First Amendment jawboning claims in any event. *See Cornelio v. Connecticut*, 32 F.4th 160, 169, 172 (2d Cir. 2022) (holding that challenged statute "plausibly fails intermediate scrutiny" and stating that courts should not dismiss such First Amendment claims by performing full intermediate scrutiny analysis on the pleadings); *Bruni v. City of Pittsburgh*, 824 F.3d 353, 371-72 (3d Cir. 2016) (similar); *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 54 (1st Cir. 2013) (clarifying that *Twombly*'s plausibility standard does not require employment-discrimination plaintiffs to plead a *prima facie* case to survive dismissal).

*Joint action.* As to joint action, the opposition brief simply ignores the long line of cases holding that "[t]he mere furnishing of information to [the government] does not constitute joint action." *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983); *see* MIT Br. 15-16. That rule controls here, and it makes good sense. The joint action line of cases applies where the government and a private entity are engaged in "a joint activity, from start to finish." *United States v. Price*, 383 U.S. 787, 795 (1966). A private entity's independent decision to comply with a government request is not "joint activity," *id.*, and DeGraff identifies no cases holding otherwise.

## B.    DeGraff's Attempt to Reframe His First Amendment Claim Fails.

Unable to establish state action on the theory actually pleaded in the Complaint, the opposition seeks to completely reframe the First Amendment claim. The new theory is that the

3

Committee, despite requesting documents, instead meant to force MIT to take personnel actions against DeGraff, and MIT somehow intuited that unstated purpose and acted on it. *E.g.*, Opp. 5. DeGraff cannot amend his pleading via his brief. *See Caldwell v. Cambra*, 802 F. Supp. 3d 8, 41 n.10 (D. Mass. 2025) ("[A] plaintiff cannot amend his complaint by adding new allegations or theories in an opposition to a motion to dismiss."). But the new theory fails regardless: State action requires that government involvement in a private party's choice be sufficiently pervasive that the choice is, "in law[,] … that of the State." *Blum*, 457 U.S. at 1004. The Complaint does not permit an inference that any personnel actions were the Committee's doing.

To start, the opposition brief's new theory is a transparent attempt to make this case look more like *Khalil v. Trustees of Columbia University in the City of New York*, No. 25-cv-2079, 2026 WL 775813 (S.D.N.Y. Mar. 19, 2026), and less like *Fakhreddine*. *Khalil* found state action on the grounds that a university was the target of a coordinated campaign by not only the Committee, but also several Executive agencies, to freeze approximately $400 million in federal grants, condition the restoration of funding on specific policy changes and actions by the institution, and thereby suppress disfavored speech on campus. *See id.* at *1-2. Those facts, the *Khalil* court found, distinguished the case from *Fakhreddine*, which—like this case—involved only a university's voluntary, "arm's length" response to document requests. *Id.* at *14. To try to bridge that gap here, the opposition seeks to reframe the First Amendment claim to encompass the various employment actions that make up DeGraff's state-law claims—the review and rejection of a course proposal, withholding of a pay increase, change in title, and "embargo" on certain online videos, *see* Opp. 1-4—and to characterize those actions not as independent choices on MIT's part, but as "MIT respond[ing] to [Committee] pressure by cooperating with it and aligning its treatment of … DeGraff with the campaign by the Committee … targeting him*," id*. at 1.

The opposition's new theory is incompatible with the Complaint. The Complaint's First Amendment claim focuses entirely on the Committee's document requests, alleging that MIT became a state actor "by virtue of having complied with the Committee's demands and having furnished … documents to the Committee." Compl. ¶190; *see id.* ¶¶171-190. By contrast, the newly cited personnel actions are discussed only in the Complaint's *state-law* counts, which do not mention the Committee even once and do not name the Committee as a defendant. *See id.* ¶¶191-208. That is no drafting accident. None of the Committee's requests came close to directing MIT, expressly or impliedly, to take any actions as to DeGraff's tenure, coursework, or salary—subjects they never specifically inquired about or even mentioned. *See* Exs. B, C, E.

Lacking any connection between the Committee's requests and MIT's personnel actions, the opposition asks this Court to infer coercion from the broader political context. It asserts that the Committee's requests and reports, plus other actions by different government actors targeting different universities, "significantly encouraged" MIT to target DeGraff. Opp. 7. And it claims MIT became a "willful participant" in the Committee's supposed scheme by allegedly taking the cited actions out of "fear[] [of] political and financial repercussions if [it] w[as] not anticipatorily compliant" with the Committee's (apparently implicit) demands. Opp. 7, 11-12. But the standards DeGraff invokes require far more than what he alleges. As *Khalil* explained, state action based on "significant encouragement" requires that the government has "intervened in [the private party's] decisionmaking," "steered [it] toward [the government's] preferred … policy," and "then supervised [the] application" of that policy. *Khalil*, 2026 WL 775813, at *12 (quoting *United States v. Stein*, 541 F.3d 130, 148 (2d Cir. 2008)). And courts will find state action based on "willful participa[tion]" only where the challenged action is "a joint activity, from start to finish," *Price*, 383 U.S. at 794-95, or where a party "invoke[s] the aid of state officials to take advantage

5

of state-created … procedures," *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 942 (1982) (defendant engaged in state action by invoking state-court attachment procedure to seize plaintiff's property).

There is nothing remotely comparable here. None of the cited personnel actions were "joint activit[ies]" with the Committee, *Price*, 383 U.S. at 794-95, which did not "intervene[]" in, "steer[]" MIT towards, or "supervise[]" any action MIT took as to DeGraff, *Khalil*, 2026 WL 775813, at *12 (quotation marks omitted). And DeGraff's claim that "MIT's structural dependency on federal grants" somehow transforms" its actions into those of the state, Opp. 19, is a breathtaking argument. Indeed, the Supreme Court has held that the mere fact that an entity receives "government funds" "does not convert [it] into a state actor." *Manhattan Cmty. Access*, 587 U.S. at 814; *see Blum*, 457 U.S. at 1011. What is missing from the Complaint here—and readily distinguishes it from the complaint in *Khalil*—is any allegation that the Committee conditioned MIT's funding on taking action against DeGraff, directed MIT to change any policy affecting him, or otherwise communicated any expectation about MIT's personnel decisions regarding DeGraff.

The chronology presented in the opposition brief does not help this theory. At the outset, every cited personnel action occurred months or even *years* before the Committee's requests in December 2025 and March 2026 or the Committee's report in March 2026. *See* Exs. C, D, E. So MIT could not have taken any of the challenged actions in response to alleged pressure exerted in those documents. And the opposition's attempt to string together a narrative of coercion by pointing to the Committee's earlier actions falls flat, particularly given that none of them referenced DeGraff. For example, although DeGraff begins his chronology with the Committee's

6

December 2023 hearing, Opp. 1, DeGraff's name was not mentioned at that hearing.[2] From there, the "*ad hoc* review" of DeGraff's course proposal began in February 2024, *see* Compl. ¶¶76-79— months after that hearing but *before* the Committee's first request arrived in March 2024, *see id.* ¶42.[3] Moreover, the Complaint pleads no facts connecting the review's outcome in May and July 2024, *id.* ¶81, to anything the Committee said or did. The same goes for the later personnel actions (in August, September, November, and December 2024), all of which the Complaint alleges violated MIT's *contractual* obligations to DeGraff, without attempting to link any of those alleged contractual violations to the Committee. *See id.* ¶¶83-91.[4]

Against that backdrop, there is no basis to infer that any of the cited personnel actions were "steered" or "supervised" by the Committee or undertaken jointly by MIT and the Committee. *Khalil*, 2026 WL 775813, at *12. The fact that these actions took place during the same general period during which the Committee was investigating antisemitism at universities, including MIT, does not come close to creating a plausible inference that MIT took any action against DeGraff because of such a "significant" exercise of the Committee's "coercive power" that it requires the actions to "be deemed to be that of the [Committee]." *Blum*, 457 U.S. at 1004. Because the Complaint's own allegations make it far more plausible that MIT took these actions independently as a private actor, Count I should be dismissed for failure to allege state action. *See, e.g., Frith v.*

---

[2] *See generally Holding Campus Leaders Accountable and Confronting Antisemitism: Hearing Before the H. Comm. on Educ. & the Workforce*, 118th Cong. (2023).

[3] DeGraff cites a March 13, 2024 statement of one member of the review, *see* Opp. 2, but that statement did not mention the Committee and is not suggestive of Committee pressure.

[4] The closest DeGraff comes is a passing reference (at 4) to an alleged statement by an MIT administrator speculating that one of the challenged actions "may [have] be[en] driven by concerns … about protecting MIT from political and financial repercussions arising from the seminar's viewpoints on Palestine/Israel," Compl. ¶92 (emphasis omitted). But this alleged statement does not mention the Committee, and, on its face, merely speculates about MIT's possible motives ("may be driven") rather than asserting any facts.

*Whole Foods Mkt., Inc.*, 38 F.4th 263, 276 (1st Cir. 2022) (complaint fails to state a claim where it has "not pleaded any factual allegations pointing in [the] direction" of plaintiffs' theory "and away from [an] obvious alternative explanation" (quotation marks omitted)); *Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 37 (1st Cir. 2011) (same where plaintiff's allegation of discrimination was "not a plausible conclusion" in light of "obvious alternative explanation[s]" for the defendant's conduct (quotation marks omitted)); *cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (same where alleged wrongful conduct "just as much in line with a wide swath of" lawful explanations).

Any other result, moreover, would undermine the "constitutional boundary between the governmental and the private" that "protects a robust sphere of individual liberty." *Manhattan Cmty. Access*, 587 U.S. at 808. Given the state-action doctrine's status as a "fundamental fact of our political order," the Supreme Court has cautioned "[c]areful adherence to the 'state action' requirement," *Lugar*, 457 U.S. at 936-37, and admonished courts to subject private actors to the threat of constitutional liability only in the "few limited circumstances" well defined across decades of the Court's cases, *Manhattan Cmty. Access*, 587 U.S. at 809. DeGraff's theory, by contrast, would burst that doctrine wide open, allowing courts to deem private parties state actors whenever they take action on a topic with respect to which some government actor has expressed a view. The opposition brief cites no case adopting that position, and both common sense and "the text and structure of the Constitution" reject it. *Id.* at 808. This Court should likewise reject DeGraff's invitation to so dramatically expand "the reach of federal law and federal judicial power." *Lugar*, 457 U.S. at 936.

### C.    DeGraff Lacks Standing.

The opposition's argument on standing depends on its attempted reframing of Count I. According to DeGraff, the claimed injuries that "satisf[y] *Lujan*'s injury, traceability and redressability requirements" are all the same employment-related injuries discussed above. Opp.

14. But DeGraff's own Complaint citations, *see* Opp. 13, show that this list of alleged injuries consists largely of the personnel actions that form the basis of his *state-law* claims and have no link to the Committee's requests. *See* Compl. ¶23 (pay freeze, title change, teaching restrictions); ¶¶91-92, 153 (video embargo); ¶154 (investigation). Indeed, several of the cited paragraphs appear *within* the state-law counts themselves. *See id.* ¶193 (Count II); ¶¶207-208 (Count IV); *see also* pp. 5-8, *supra* (refuting claim that MIT took any personnel action because of Committee pressure).[5] Because standing doctrine requires a "claim-by-claim analysis," *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 733 (1st Cir. 2016), these alleged state-law injuries cannot support standing for DeGraff's First Amendment claim.

Without those allegations, what remains is: (1) a generalized concern about chilled speech; (2) speculative fears of future harassment by third parties; and (3) the possible disclosure of unspecified records—all of which are insufficient. *See* MIT Br. 17; *see also* Compl. ¶¶6, 10, 12, 58-60, 151, 172. The opposition's cursory responses on these points do not move the needle.

***Chill.*** DeGraff lacks standing because he has not alleged that the Committee's investigation will in fact chill his speech. *See* MIT Br. 17-19. DeGraff argues the relevant question is whether the challenged conduct "would deter a person of ordinary firmness," Opp. 13, but Article III requires injury "*in fact*," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (emphasis added). Thus, a First Amendment plaintiff "must allege that his speech was *in fact* chilled or intimidated." *Sullivan v. Carrick*, 888 F.2d 1, 4 (1st Cir. 1989) (emphasis added). *Susan B. Anthony List v. Driehaus* is illustrative: The plaintiffs there had standing because they "pleaded specific statements they intend[ed] to make in [the] future" but were chilled from making because of "a credible threat

---

[5] DeGraff also cites ¶¶173-174 of the Complaint, *see* Opp. 13, but those paragraphs simply recite general legal propositions and so do not help establish DeGraff's standing.

of enforcement" under a statute proscribing such statements. 573 U.S. 149, 161 (2014). Here, by contrast, DeGraff has not identified any statements he is unwilling to make, and the Committee has not threatened enforcement against him; indeed, as an arm of the Legislative Branch, it is not clear that the Committee even has any relevant enforcement authority. DeGraff thus alleges only the sort of "subjective 'chill'" that *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972), deems insufficient.

DeGraff's citations (at 13) to *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963), and *Backpage.com v. Dart*, 807 F.3d 229 (7th Cir. 2015), are inapposite. The publishers in *Bantam Books* suffered an actual injury, "impaired sales of the[ir] [black]listed publications." 372 U.S. at 64 n.6. And *Backpage.com* did not address standing at all; the cited portion of the opinion offers just a general description of jawboning. *See* 807 F.3d at 230-31. Neither case holds that a plaintiff claiming First Amendment chill as an Article III injury can proceed without alleging actual chill.

***Doxing and harassment.*** DeGraff's fear of harassment by unnamed third parties is too speculative to support standing. *See* MIT Br. 19-20. DeGraff does not identify what information MIT could disclose that is not already publicly known by virtue of his own public statements, social media, and court filings. Without knowing that, there is no way to know what the Committee would do with the information or how third parties would react, and that is precisely the attenuated "chain of possibilities" that *Fakhreddine* deemed insufficient. 2025 WL 345089, at *4. Nor can DeGraff bootstrap standing from past harassment by third parties, *e.g.*, Opp. 5 (citing Compl. ¶6 (discussing a November 2024 incident); *see* Compl. ¶151—that is the central lesson of *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). Finally, DeGraff has no response to the fact that the traceability requirement *also* forecloses standing "where the [challenged] action is [too] far removed from its distant (*even if predictable*) ripple effects." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024) (emphasis added). That is this case. *See* MIT Br. 20.

10

***Disclosure of confidential materials.*** Finally, DeGraff fails to allege an injury from the mere disclosure of documents to the Committee. *See* MIT Br. 20-21. He insists he is not required to allege that disclosure will injure him because only MIT knows which documents it will provide the Committee. Opp. 12. But even if DeGraff cannot identify which documents MIT might produce, he must still allege that disclosure of *any* documents will cause him an Article III injury. *See Hochendoner*, 823 F.3d at 731 ("[T]he plaintiff bears the burden of establishing sufficient factual matter to plausibly demonstrate his standing" but "[n]either conclusory assertions nor unfounded speculation can supply the necessary heft."). He has not. For example, the Complaint does not allege that the Committee seeks documents implicating a cognizable privacy interest such that their production injures DeGraff. *Contra Khalil*, 2026 WL 775813, at \*7-9 (Committee sought student records protected under the Family Educational Rights and Privacy Act).

### D.    DeGraff Fails to State a Claim Under *Vullo*.

DeGraff's First Amendment claim—whether construed as a challenge to MIT's provision of information to the Committee or to the broader set of employment actions his brief cites—also fails on the merits. To state a claim under *National Rifle Association of America v. Vullo*, a plaintiff must plausibly allege "conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action" by the government against a private entity "in order to" coerce the private entity into "punish[ing] or suppress[ing] the plaintiff's speech." 602 U.S. 175, 191 (2024). In this context, an "adverse government action" means a "sanction," "criminal or otherwise." *Id.* at 190-91 (citation omitted). Thus, the typical fact pattern involves a threat of civil "enforcement actions," *id.* at 192, or even criminal "prosecution," *Bantam Books*, 372 U.S. at 62— threats, in other words, of actual punishment.

DeGraff's repeated assertions that MIT's actions suggest "anticipatory complian[ce]" with the Committee's unstated desires are a red herring. Opp. 7; *see* Opp. 1, 8, 10, 14, 17, 24. That term

is simply a description of the typical jawboning fact pattern. In *Bantam Books*, the private distributors stopped carrying books the government deemed "objectionable" to avoid threatened "prosecution" against "purveyors of obscenity." 372 U.S. at 59-63. And in *Vullo*, an insurer agreed to "cease[] underwriting NRA policies" to avoid a regulator's threat to "'focus' her enforcement actions 'solely' on the syndicates with ties to the NRA." 602 U.S. at 192-93. It is true that in both cases, the private entities acted anticipatorily to avoid the threat of adverse action. But the crucial point is that, in both cases, adverse action was *actually threatened*; that is *why* the private action can be deemed coerced.

DeGraff's Complaint contains no such allegations. He pleads no facts suggesting that, if MIT did not comply with the Committee's requests or take the challenged personnel actions against DeGraff, the Committee would subject MIT to adverse action. *See Vullo*, 602 U.S. at 191; *accord* Committee Br. 25 ("MIT is under no obligation to respond" to the requests). DeGraff's brief makes two passing efforts to argue otherwise by pointing to (1) the Committee's suggestion that it may issue a subpoena if MIT does not comply voluntarily with the March 2026 Request; and (2) funding threats issued to other universities. *See* Opp. 12. Neither suffices.

On the first point, DeGraff has failed to allege that the Committee's suggestion that it may "escalate with subpoenas if MIT does not oblige" its requests voluntarily, Compl. ¶57, amounts to the threat of a "sanction" under *Vullo*, 602 U.S. at 190. Except in extraordinary circumstances indicating that a subpoena has been issued specifically to harass or punish its recipient, *e.g.*, *Trump v. Mazars USA, LLP*, 591 U.S. 848, 863 (2020), the issuance of a subpoena "is not an adversarial proceeding against [the recipient]," *RNR Enters., Inc. v. SEC*, 122 F.3d 93, 98 (2d Cir. 1997). DeGraff's Complaint alleges no facts plausibly suggesting that the Committee has threatened to issue a subpoena *to punish* MIT rather than to obtain the requested documents.

On the second, while the opposition implies that MIT has been subjected to funding threats like those in *Khalil*, *see* Opp. 1, 7, 11, the circumstances are distinguishable. In *Khalil*, plaintiffs sued several agencies that have direct legal authority over the university's federal funding and had in fact exercised that authority to freeze $400 million in grants. *See* 2026 WL 775813, at *1-2. Here, by contrast, DeGraff has not sued any agency with Title VI enforcement authority; the sole government defendant is the Committee, which *has no enforcement authority* regarding MIT's funding and does not appropriate funds to MIT or any federal agency from which it receives grants or contracts. That two of the Committee's requests correctly described MIT's obligations as a funding recipient under Title VI, *see* Ex. C at 1; Ex. E at 5, does not change that fact.

Finally, DeGraff's *Vullo* claim fails for an additional, independent reason: MIT, as the *victim* of alleged coercion, is not a proper defendant. *See* MIT Br. 22-23. The opposition's sole response is that "the 'jawboning' doctrine is specifically designed to address" cases involving the government's use of a "private intermediary" to engage in constitutional violations. Opp. 10. That is true, but it does not answer the operative question of whether constitutional liability can run against not just the coercing state actor but *also* the victimized intermediary. Both *Vullo* and *Bantam Books* involved claims brought only against the government, and MIT's motion identified cases holding that "only the state actor, and not the private party, should be held liable for the constitutional violation that resulted from the state compulsion." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 838 (9th Cir. 1999) (quotation marks omitted). DeGraff has no response.

### E.    If the Court Deems the Congressional Defendants Immune From Suit, Rule 19 Requires That Count I Be Dismissed Against MIT As Well.

DeGraff's Rule 19 argument is self-defeating. He asserts that "[t]he fact that Congress may assert immunity for some acts does not grant MIT immunity for its own conduct." Opp. 15. But a necessary predicate of DeGraff's First Amendment claim is that the actions he challenges are not

13

"[MIT's] *own conduct*," *id.* (emphasis added), but rather "must in law be deemed to be that of *the [Committee]*," *Blum*, 457 U.S. at 1004 (emphasis added); *accord* Opp. 11 ("MIT's actions were not independent"). Because DeGraff challenges the Committee's alleged violation of his First Amendment rights and seeks to enjoin MIT from responding to the Committee's requests, the Committee plainly "claims an interest relating to the subject of th[is] action" that may be "impair[ed] or impede[d]" if it cannot be joined. Fed. R. Civ. P. 19(a)(1)(B), (B)(i). And as MIT explained, *see* MIT Br. 23-25, "[a] case may not proceed when a required-entity sovereign is not amenable to suit," *Republic of Philippines v. Pimentel*, 553 U.S. 851, 867 (2008). The opposition has no answer to *Pimentel*'s clear application here.

The opposition's only effort to avoid dismissal depends on its incorrect reframing of the Complaint. It asserts that the Court can grant DeGraff "meaningful relief against MIT without … compel[ling] Congress to do anything" by, *inter alia*, enjoining MIT from engaging in "viewpoint-discriminatory suppression of [his] academic and other speech" and his "teaching and … teaching materials." Opp. 16. Yet DeGraff's *First Amendment* claim, as pleaded, seeks to enjoin MIT from voluntarily producing documents to the Committee. *See* pp. 1-3, *supra*. Any injunction tailored to that claim would necessarily bear directly on the Committee's investigation—telling MIT what it may and may not produce in response to the Committee's requests and thus (in the opposition's words) "invalidat[ing] Congressional proceedings" and "direct[ing] Congress's internal work." Opp. 16. If the Committee is immune from suit, that relief cannot be granted in its absence. *See Pimentel*, 553 U.S. at 867. That is the critical point that *Khalil*—which never addressed these immunity-specific Rule 19 considerations—did not grapple with. *Contra* Opp. 16.

DeGraff's remaining cases do not change the analysis. *Contra* Opp. 19, 23. The court in *Republican National Committee v. Pelosi* did not decide the Rule 19 issue in plaintiffs' favor; it

14

"assume[d] without deciding" that the suit could proceed absent the congressional defendants. 602 F. Supp. 3d 1, 24 (D.D.C. 2022). Regardless, that opinion was vacated as moot, *see Republican Nat'l Comm. v. Pelosi*, No. 22-5123, 2022 WL 4349778, at \*1 (D.C. Cir. Sept. 16, 2022), so carries no precedential value. *United States v. AT&T Co.* is even farther afield. There, the Department of Justice sued AT&T to enjoin it from complying with a congressional subpoena, and the relevant House committee intervened to defend the subpoena. *See* 567 F.2d 121, 122-23 (D.C. Cir. 1977). The case did not present the Rule 19 issue at all. To the contrary, it confirmed that the committee, *not* the private subpoena recipient, was "the real [defendant] in interest." *Id.* That is precisely why a finding that the Committee is immune would require dismissal against MIT as well.

## II.    Leave to Amend Should Be Denied.

In a single sentence, DeGraff seeks leave to amend so that he can add new facts relating to "injur[y] and traceability," Opp. 6—in other words, to support his claim to Article III standing. But a single, bare statement "does not constitute a motion to amend a complaint." *Gray v. Evercore Restructuring L.L.C.*, 544 F.3d 320, 327 (1st Cir. 2008). Without such a motion, "the district court cannot be faulted for failing to grant such leave *sua sponte.*" *Id.*; *see also Hochendoner*, 823 F.3d at 735-36 ("In the absence of exceptional circumstances, a district court is under no obligation to offer a party leave to amend when such leave has not been requested by motion."). Regardless, DeGraff's First Amendment claim must be dismissed for many reasons besides his lack of standing. *See* pp. 1-8, *supra*. Leave to amend should thus be denied as futile. *See Hatch v. Dep't for Child., Youth & Their Fams.*, 274 F.3d 12, 19 (1st Cir. 2001).

### CONCLUSION

For the foregoing reasons, Count I should be dismissed against MIT with prejudice.

15

Date: July 24, 2026

Respectfully submitted,

MASSACHUSETTS INSTITUTE
OF TECHNOLOGY

/s/ Ishan K. Bhabha

Daniel J. Cloherty (BBO# 565772)
  dcloherty@clohertysteinberg.com
  617.481.0610
Alexandra Arnold (BBO# 706208)
  aarnold@clohertysteinberg.com
  617.481.0610
CLOHERTY & STEINBERG LLP
One Financial Center
  Suite 1120
Boston, MA 02111

Ishan K. Bhabha (*pro hac vice*)
  IBhabha@jenner.com
  202.637.6327
Lauren J. Hartz (*pro hac vice*)
  LHartz@jenner.com
  202.637.6363
Elizabeth Henthorne (*pro hac vice*)
  BHenthorne@jenner.com
  202.637.6367
JENNER & BLOCK LLP
1099 New York Avenue, NW
  Suite 900
Washington, DC 20001

16

**CERTIFICATE OF SERVICE**

I certify that a true copy of this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 24, 2026.

 */s/ Ishan K. Bhabha*
Ishan K. Bhabha